**Alex STRANDELL, et al., Plaintiffs,**

**v.**

**JACKSON COUNTY, ILLINOIS, et al., Defendants.**

**Civ. No. 85–4159.**

United States District Court,
S.D. Illinois,
Benton Division.

April 17, 1987.

---

Timothy S. Richards and Richard E. Boyle, Gundlach, Lee, Eggmann, Boyle & Roessler, Belleville, Ill., and Thomas F. Tobin, Gerald L. Maatman, Jr. and John W. Dondanville, Baker & McKenzie, Chicago, Ill., for plaintiffs.

Jill E. Adams, W. Charles Grace, Mary Lou Rouhandeh and Richard A. Green, Feirich, Schoen, Mager, Green & Associates, Carbondale, Ill., for defendants.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

On March 31, 1987, this Court held counsel for plaintiffs in contempt of Court for failure to obey its Order that the parties proceed in this case by way of a non-binding Summary Jury Trial. The matter was continued until April 6, 1987 while the Court contemplated appropriate sanctions. In addition to the Court's statements made on the record on those dates explaining why it found such action appropriate, the Court will more fully expound on its reasoning herein.

The Final Pretrial Order prepared by the parties to this action indicates that the probable length of trial is 20 to 25 days and that over 300 exhibits are not agreed upon. Since this Court operates on a four-day trial week, this trial could take up five to six weeks of the Court's docket. (Mondays in this Court are reserved for matters other than trial, such as dispositions in criminal cases, final pretrial conferences in both criminal and civil cases, preliminary pretrial conferences in civil cases, hearings on motions, status conferences, emergency matters and other miscellaneous matters which inevitably arise.) The parties in this case are also poles apart in terms of settlement. In view of these facts and the realistic assessment by this Court that its docket is not amenable to a five to six week trial at any time in the near future, the Court suggested that a one to two day Summary Jury Trial involving a limited number of live witnesses would be the most appropriate approach to handling this case. This Court has utilized the Summary Jury Trial with great success, as in every case a settlement has resulted or the parties agreed to be bound by the verdict.[1] Although trial counsel for plaintiffs has never been involved in a Summary Jury Trial, he objected to the procedure on the grounds that he would have to reveal his trial strategy and case preparation prior to trial and to the benefit of the defendants. For various reasons outlined in their motion, plaintiffs claim that this Court is powerless to require their participation in a Summary Jury Trial.

■ Plaintiffs' attitude is somewhat baffling to the Court. In modern litigation, discovery should leave little surprise to litigants as to what their opponent's case is all about. *See* 10 *Fed.Proc.L.Ed.* § 26:1 Moreover, plaintiffs' arguments are predicated on the assumption that a Summary Jury Trial will not result in the settlement of this case. However, it is this Court's belief that "[i]t is always possible that exposure of the decision makers to the realities of a case will bring about a reevaluation of settlement posture on the part of those persons." *G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.,* 107 F.R.D. 275, 277 (W.D.Wis.1985). A Summary Jury Trial is the perfect vehicle for revealing such realities.

■ This Court also disagrees with plaintiffs' argument that it lacks the power to compel them to engage in a Summary Jury Trial. The 1984 Judicial Conference adopted a resolution endorsing the experimental use of Summary Jury Trials.

The original draft of the resolution provided:

proceed to actual trial. Marcotte, *Summary Jury Trials Touted,* ABA Journal, p. 27, April 1, 1987.

---

1. Judge Thomas Lambros of the United States District Court for the Northern District of Ohio, who originated this procedure, had only 5 of the 153 cases he assigned to Summary Jury Trials

RESOLVED, the Judicial Conference endorses the use of summary jury trials, *only with the voluntary consent of the parties*, as a potentially effective means of promoting the fair and equitable settlement of lengthy civil jury cases. With proper authorization by local rules, summary jury trials are recommended to District Courts for consideration as an optional device. *Report of Judicial Conference Committee on the Operation of the Jury System Agenda G–13, Page 4, September 1984.* (Emphasis supplied.)

The final draft however omitted the language regarding voluntary consent and stated:

RESOLVED, that the Judicial Conference endorses the experimental use of summary jury trials as a potentially effective means of promoting the fair and equitable settlement of potentially lengthy civil jury cases.

Report of the Proceedings of the Judicial Conference of the United States, p. 88 (September, 1984)

Judge Lambros of the Northern District of Ohio, who is largely responsible for this innovative procedure, provides the following analysis regarding the Court's authority to order a Summary Jury Trial:

The Summary Jury Trial is firmly rooted in the Federal Rules of Civil Procedure. In light of Fed.R.Civ.P. 1, SJT is within the court's pretrial powers pursuant to Fed.R.Civ.P. 16(a)(1), (5), (c)(11), and the court's inherent power to manage and control its docket.

Rule 1 of the Federal Rules of Civil Procedure states that the Rules, "shall be construed to secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. Rule 16(a), concerning pretrial activities, states, "In any action, the court may in its discretion direct the attorneys for the parties and any unrepresented parties to appear before it for a conference or conferences before trial for such purposes as (1) expediting the disposition of the action ... and (5) facilitating the settlement of the case." Fed.R.Civ.P. 16(a)(1) and (5).

Furthermore, the Rules recommend that settlement be discussed, as well as potential alternatives to trial. Newly adopted Fed.R.Civ.P. 16(c)(7) and (11) provide that "[t]he participants at any conference under this rule may consider and take action with respect to ... (7) the possibility of settlement or the use of extrajudicial procedures to resolve the dispute ... and (11) such other matters as may aid in the disposition of the action." Fed.R.Civ.P. 16(c)(7) and (11).

The SJT process recognizes the importance our judicial system places on decisions rendered by lay jurors. This is consistent with Fed.R.Civ.P. 39(c), which provides for an advisory jury in cases not triable to a jury as of right. Additionally, use of the SJT is consistent with Fed.R.Civ.P. 83, which provides in pertinent part, "[i]n all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules." Fed.R.Civ.P. 83.

In the Northern District of Ohio, the SJT has been specifically provided for by Local Rule 17.02, a copy of which appears as Appendix A to this Report, and which states:

The Judge may, in his or her discretion, set any appropriate civil case for Summary Jury Trial or other alternative method of dispute resolution, as he or she may choose.

Lambros *The Summary Jury Trial and Other Alternative Methods of Dispute Resolution*, 103 F.R.D. 461, 469–47 (1984). The Court of Appeals for this Circuit has also commented on the power of the trial court to process a case for trial. *O'Malley v. Chrysler Corp.*, 160 F.2d 35, 36 (7th Cir.1947).

This Court recognizes that its discretion in this context is not unbridled, and realizes the inappropriateness of compelling the parties to settle a case. *Kothe v. Smith*, 771 F.2d 667 (2d Cir.1985). The committee comments to Rule 16, *Fed.R.Civ.Pro.* as noted by plaintiffs, state that it is not the purpose of the Rule "to impose settlement

negotiations on unwilling litigants." These comments do not, however, mean this Court lacks the power to order the litigants to engage in a process which will enhance the possibility of fruitful negotiations. The comments go on to state that settlement conferences were not made mandatory because "they would be a waste of time in many cases." Thus, it is up to the court to determine what is the best procedure to follow to secure a speedy and just resolution of a lawsuit taking into account the particularities of the case before it. This Court believes it has done so by mandating a Summary Jury Trial in this case.

■ Finally, the Court finds that without the flexibility of utilizing procedures such as the Summary Jury Trial, the litigants in this case will be forced to wait a lengthy time before this Court's docket can be cleared for a five to six week jury trial. This Court's most recent statistics show that as of March, 1987 there were 80 criminal and 1,903 civil cases pending in this district which has three full-time judges. In the month of March alone 320 new cases were filed. For the year preceding June 30, 1986, the 1986 Federal Court Management Statistics indicate that the weighted case filings per judgeship in this District is second in this Circuit and fourteenth in the country. These statistics, however, were based upon three existing judgeships, while in fact, only two judgeships were in existence at the time.[2] The Court is presently involved in a three to four week criminal trial stemming from a 1986 indictment which was scheduled for trial the same day of the *Strandell* case. The Court also has three other criminal cases of equal length waiting to be tried at the conclusion of this criminal case. These statistics and the Court's obligations under the *Speedy Trial Act,* 18 U.S.C. § 3161 et seq., require that this Court be allowed to order the parties to engage in an alternative non-binding method of trial which may resolve this matter. As noted by one court,

Traditionally, judges—most of whom like this writer have been practicing attorneys themselves—have felt the court should not interfere with an attorney's right to present a case however he saw fit. Indeed, I know of no judge who would not like to let the attorneys have as much time as they think they need to present their case. But the days when courts could afford that luxury have passed.

*United States v. Reaves,* 636 F.Supp. 1575, 1579 (E.D.Ky.1986). The ability of a court to use its best judgment to move its crowded docket must be preserved, where it involves a non-binding yet highly successful procedure. "[T]he exigencies of modern dockets demand the adoption of novel and imaginative means lest the courts, inundated by a tidal wave of cases, fail in their duty to provide a just and speedy disposition of every case." *Lockhart v. Patel,* 115 F.R.D. 44 (E.D.Ky.1987).

Attorneys are usually reluctant to participate in procedures which break from traditional and familiar methods of litigation. Reliance on totally voluntary use of non-binding alternate dispute resolution procedures where the attorneys are aware of the Court's inability to mandate their participation will severely undermine the utility of such procedures.

Accordingly, plaintiffs' Motion to Reconsider this Court's Imposition of a Summary Jury Trial is hereby DENIED. In conjunction with the record of March 31, 1987 and April 6, 1987, Thomas Tobin, plaintiffs' attorney, is hereby ADJUDGED to be in criminal contempt of Court for failure to comply with this Court's Order that he participate in the selection of a jury for the Summary Jury Trial. The Court hereby imposes on Attorney Tobin a fine of $500.00 payable to the United States of America as punishment for his contempt.

IT IS SO ORDERED.

---

**2.** The Honorable William D. Stiehl was sworn in as the third Judge of this District in August of 1986.