In the Matter of Alex **STRANDELL,**
**et al., Plaintiffs,**

v.

**JACKSON COUNTY, ILLINOIS, et**
**al., Defendants.**

**Appeal of Thomas F. TOBIN, Attorney**
**at Law, Contemnor–Appellant.**

**No. 87–1559.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 10, 1987.

Decided Sept. 10, 1987.

Opinion Jan. 21, 1988.

As Corrected Jan. 28, 1988.

Gerald L. Maatman, Jr., Baker & McKen-
zie, Chicago, Ill., for plaintiffs.

James L. Porter, Asst. U.S. Atty., East
St. Louis, Ill., for defendants.

* The Honorable Myron L. Gordon, senior district
judge for the Eastern District of Wisconsin, sit-
ting by designation.

Before WOOD and RIPPLE, Circuit
Judges, and GORDON, Senior District
Judge.*

RIPPLE, Circuit Judge.

In this appeal, we must decide whether a
federal district court can *require* litigants
to participate in a nonbinding summary
jury trial. In a nonbinding summary jury
trial, attorneys summarize their case be-
fore a jury, which then renders a nonbind-
ing verdict. The purpose of this device is
to motivate litigants toward settlement by
allowing them to estimate how an actual
jury may respond to their evidence. Thom-
as Tobin, Esquire, appeals from a judgment
of criminal contempt for refusing to partic-
ipate in such a procedure. We vacated the
judgment by an order dated September 10,
1987, 830 F.2d 195; we now issue a full
opinion.

I

Facts

Mr. Tobin represents the parents of Mi-
chael Strandell in a civil rights action
against Jackson County, Illinois. The case
involves the arrest, strip search, imprison-
ment, and suicidal death of Michael Stran-
dell. In anticipation of a pretrial confer-
ence on September 3, 1986, the plaintiffs
filed a written report concerning settle-
ment prospects. The plaintiffs reported
that they were requesting $500,000, but
that the defendants refused to discuss the
issue. At the pretrial conference, the dis-
trict court suggested that the parties con-
sent to a summary jury trial. A summary
jury trial generally lasts one day, and con-
sists of the selection of six jurors to hear
approximations by counsel of the expected
evidence. After receiving an abbreviated
charge, the jury retires with directions to
render a consensus verdict. After a ver-
dict is reached, the jury is informed that its
verdict is advisory in nature and nonbind-
ing. The objective of this procedure is to
induce the parties to negotiate a settle-
ment.[1] Mr. Tobin informed the district

1. The guidelines for a summary jury trial are set
forth in Lambros, *Report to The Judicial Confer-*
*ence of the United States, reprinted at* 103 F.R.D.
461–98 (1984).

court that the plaintiffs would not consent to a summary jury trial, and filed a motion to advance the case for trial. The district court ordered that discovery be closed on January 15, 1987, and set the case for trial.

During discovery, the plaintiffs had obtained statements from 21 witnesses. The plaintiffs learned the identity of many of these witnesses from information provided by the defendants. After discovery closed, the defendants filed a motion to compel production of the witnesses' statements. The plaintiffs responded that these statements constituted privileged work-product; they argued that the defendants could have obtained the information contained in them through ordinary discovery. The district court denied the motion to compel production; it concluded that the defendants had failed to establish "substantial need" and "undue hardship," as required by Rule 26(b)(3) of the Federal Rules of Civil Procedure.

On March 23, 1987, the district court again discussed settlement prospects with counsel. The court expressed its view that a trial could not be accommodated easily on its crowded docket and again suggested that the parties consent to a summary jury trial. On March 26, 1987, Mr. Tobin advised the district court that he would not be willing to submit his client's case to a summary jury trial, but that he was ready to proceed to trial immediately. He claimed that a summary jury trial would require disclosure of the privileged statements. The district court rejected this argument, and ordered the parties to participate in a summary jury trial.

On March 31, 1987, the parties and counsel appeared, as ordered, for selection of a jury for the summary jury trial. Mr. Tobin again objected to the district court's order compelling the summary jury trial. The district court denied this motion. Mr. Tobin then respectfully declined to proceed with the selection of the jury. The district court informed Mr. Tobin that it did not have time available to try this case, nor would it have time for a trial "in the foreseeable months ahead." Tr. of March 31, 1987 at 5. The court then held Mr. Tobin in criminal contempt for refusing to proceed with the summary jury trial.

The district court postponed disposition of the criminal contempt judgment until April 6, 1987. On that date, the district court asked Mr. Tobin to reconsider his position on proceeding with the summary jury trial. Mr. Tobin reiterated his view that the court lacked the power to compel a summary jury trial, and maintained that such a proceeding would violate his client's rights. The district court entered a criminal contempt judgment of $500 against Mr. Tobin. Mr. Tobin filed a notice of appeal that same day.

## II

### The District Court Opinion

The district court filed a memorandum opinion setting forth its reasons for ordering a summary jury trial. *Strandell v. Jackson County*, 115 F.R.D. 333 (S.D.Ill. 1987) [hereinafter Mem. op.]; R.144. The district court noted that trial in this case was expected to last five to six weeks, and that the parties were "poles apart in terms of settlement." *Id.* at 334. It further noted that summary jury trials had been used with great success in such situations.

In determining that it had the power to compel a summary jury trial, the court relied on a resolution adopted in 1984 by the Judicial Conference of the United States. The original draft of the resolution endorsed summary jury trials "with the voluntary consent of the parties." *Id.* at 335 (quoting *Report of the Judicial Conference Committee on the Operation of the Jury System Agenda* G–13, at 4 (Sept. 1984)). The final draft of the resolution, however, omitted this phrase. *Id.* (quoting *Report of the Proceedings of the Judicial Conference of the United States*, at 88 (Sept.1984)).

The court then determined that Rule 16 of the Federal Rules of Civil Procedure permits a mandatory summary jury trial. The court pointed out that Rule 16(a) authorizes a court in its discretion to require attorneys "to appear before it for a conference or conferences before trial for such

purposes as (1) expediting the disposition of the action ... and ... (5) facilitating the settlement of the case." Furthermore, Rule 16(c) provides that "[t]he participants at any conference under this rule may consider and take action with respect to ... (7) the possibility of settlement or the use of extrajudicial procedures to resolve the dispute ... and ... (11) such other matters as may aid in the disposition of the action." The court admitted that "its discretion in this context is not unbridled." Mem. op. at 335. However, the court held that Rule 16 grants district courts "the power to order the litigants to engage in a process which will enhance the possibility of fruitful negotiations." *Id.*

The court also held that its obligations under the Speedy Trial Act, 18 U.S.C. § 3161, et seq.,[2] gave it additional authority for ordering a summary jury trial. The court noted that the Southern District of Illinois ranked second in the Seventh Circuit and fourteenth in the country for case filings per judgeship. Mem. op. at 336. The court said that the "ability of a court to use its best judgment to move its crowded docket must be preserved, where it involves a non-binding yet highly successful procedure." *Id.* at 336.

### III

### Analysis

We begin by noting that we are presented with a narrow question: Whether a trial judge may *require* a litigant to participate in a summary jury trial to promote settlement of the case. We are *not* asked to determine the manner in which summary jury trials may be used with the consent of the parties. Nor are we asked to express a view on the effectiveness of this technique in settlement negotiations.[3]

### A.

In turning to the narrow question before us—the legality of *compelled* participation in a summary jury trial—we must also acknowledge, at the very onset, that a district court no doubt has substantial inherent power to control and to manage its docket. *Link v. Wabash R.R.*, 370 U.S. 626, 629–30, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962); *J.F. Edwards Constr. Co. v. Anderson Safeway Guard Rail Corp.*, 542 F.2d 1318, 1323 (7th Cir.1976). That power must, of course, be exercised in a manner that is in harmony with the Federal Rules of Civil Procedure. Those rules are the product of a careful process of study and reflection designed to take "due cognizance both of the need for expedition of cases and the protection of individual rights." S.Rep. No. 1744, 85th Cong., 2d Sess., *reprinted in* 1958 *U.S. Code Cong. & Admin. News* 3023, 3026. That process, set forth in the Rules Enabling Act, 28 U.S.C. § 2072,[4] also reflects the joint responsibility of the legislative and judicial branches of government in striking the delicate balance between these competing concerns. *See generally Hanna v. Plumer*, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965). Therefore, in those areas of trial practice where the Supreme Court and the Congress, acting together, have addressed the appropriate balance between the needs

---

**2.** The Speedy Trial Act sets stringent time limits for the commencement of trial in criminal cases. *See generally* C. Wright, *Federal Practice and Procedure (Criminal)* § 833 (1982 & Supp. 1987).

**3.** *Compare* Lambros, *supra* note 1, *with* Posner, Summary Jury Trials and Other Methods of Alternate Dispute Resolution: Some Cautionary Observations, 53 *U.Chi.L.Rev.* 366, 386 (1986).

**4.** In pertinent part, the Rules Enabling Act provides:

The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure of the district courts and courts of appeals of the United States in civil actions, including admiralty and maritime cases, and appeals therein, and the practice and procedure in proceedings for the review by the courts of appeals of decisions of the Tax Court of the United States and for the judicial review or enforcement of orders of administrative agencies, boards, commissions, and officers.

Such rules shall not abridge, enlarge or modify any substantive right and shall preserve the right of trial by jury as at common law and as declared by the Seventh Amendment to the Constitution.

28 U.S.C. § 2072.

for judicial efficiency and the rights of the individual litigant, innovation by the individual judicial officer must conform to that balance.

In this case, the district court quite properly acknowledged, at least as a theoretical matter, this limitation on its power to devise a new method to encourage settlement. Consequently, the court turned to Rule 16 of the Federal Rules of Civil Procedure in search of authority for the use of a mandatory summary jury trial. In the district court's view, two subsections of Rule 16(c) authorized such a procedure. As amended in 1983, those subsections read:

The participants at any conference under this rule may consider and take action with respect to

. . . .

(7) the possibility of settlement or the use of extrajudicial procedures to resolve the dispute;

. . . .

(11) such other matters as may aid in the disposition of the action.

Fed.R.Civ.P. 16(c)(7), (11).

Here, we must respectfully disagree with the district court. We do not believe that these provisions can be read as authorizing a *mandatory* summary jury trial. In our view, while the pretrial conference of Rule 16 was intended to foster settlement through the use of extrajudicial procedures, it was not intended to require that an unwilling litigant be sidetracked from the normal course of litigation. The drafters of Rule 16 certainly intended to provide, in the pretrial conference, "a neutral forum" for discussing the matter of settlement. Fed.R.Civ.P. 16 advisory committee's note. However, it is also clear that they did not foresee that the conference would be used "to impose settlement negotiations on unwilling litigants...." *Id.; see also* 6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1525 (Supp.1987) ("As the Advisory Committee Note indicates, this new subdivision does not force unwilling parties into settlement negotiations."). While the drafters intended that the trial judge *"explor[e]* the use of procedures other than litigation to resolve the dispute,"—including *"urging* the litigants to employ adjudicatory techniques outside the courthouse,"—they clearly did not intend to *require* the parties to take part in such activities. Fed.R.Civ.P. 16 advisory committee's note (emphasis supplied). As the Second Circuit, commenting on the 1983 version of Rule 16, wrote: "Rule 16 ... was not designed as a means for clubbing the parties—or one of them— into an involuntary compromise." *Kothe v. Smith,* 771 F.2d 667, 669 (2d Cir.1985).

Our interpretation of how Rule 16 was intended to be used with respect to settlement procedures is substantially reinforced by the drafters' commentary with respect to other parts of the rule. For instance, the last sentence of Rule 16(c), added in 1983, reads as follows: "At least one of the attorneys for each party participating in any conference before trial shall have authority to enter into stipulations and to make admissions regarding all matters that the participants may reasonably anticipate may be discussed." Fed.R.Civ.P. 16(c). The drafters' notes describe it in the following terms:

The last sentence of subdivision (c) is new. It has been added to meet one of the criticisms of the present practice described earlier and insure proper preconference preparation so that the meeting is more than a ceremonial or ritualistic event. The reference to "authority" is not intended to insist upon the ability to settle the litigation. Nor should the rule be read to encourage the judge conducting the conference to compel attorneys to enter into stipulations or to make admissions that they consider to be unreasonable, that touch on matters that could not normally have been anticipated to arise at the conference, or on subjects of a dimension that normally require prior consultation with and approval from the client.

Fed.R.Civ.P. 16 advisory committee's note (citation omitted).

Our decision is consistent with two decisions issued by this court prior to the 1983 amendments to Rule 16. In *J.F. Edwards Constr. Co. v. Anderson Safeway Guard*

*Rail Corp.*, 542 F.2d 1318 (7th Cir.1976), the court ruled that a district court could not use Rule 16 to compel parties to stipulate facts to which they could not voluntarily agree. One year later, in *Identiseal Corp. v. Positive Identification Sys.*, 560 F.2d 298 (7th Cir.1977), this court reiterated that Rule 16 was noncoercive when it determined that district courts lacked the power to order that a party undertake further discovery. The court said:

> The limit of the court's power was to compel plaintiff to consider the possibility of conducting discovery, and there is no evidence in the record that plaintiff's attorney rejected the district court's preferred method of litigating the action without giving it serious consideration.

*Id.* at 302 (footnotes omitted). Although *J.F. Edwards* and *Identiseal* antedate the amendments to Rule 16, nothing in the amended rule or in the Advisory Committee Notes suggests that the amendments were intended to make the rule coercive.

The use of a mandatory summary jury trial as a pretrial settlement device would also affect seriously the well-established rules concerning discovery and work-product privilege. *See* Fed.R.Civ.P. 26(b)(3); *see also Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). These rules reflect a carefully-crafted balance between the needs for pretrial disclosure and party confidentiality. Yet, a compelled summary jury trial could easily upset that balance by requiring disclosure of information obtainable, if at all, through the mandated discovery process. We do not believe it is reasonable to assume that the Supreme Court and the Congress would undertake, in such an oblique fashion, such a radical alteration of the considered judgments contained in Rule 26 and in the case law. If such radical surgery is to be performed, we can expect that the national rule-making process outlined in the Rules Enabling Act will undertake it in quite an explicit fashion.[5]

## B.

The district court, in explaining its decision to compel the use of the summary jury trial, noted that the Southern District of Illinois faces crushing caseloads. The court suggested that handling that caseload, including compliance with the Speedy Trial Act, required resort to such devices as compulsory summary jury trials. We certainly cannot take issue with the district court's conclusion that its caseload places great stress on its capacity to fulfill its responsibilities. However, a crowded docket does not permit the court to avoid the adjudication of cases properly within its congressionally-mandated jurisdiction. *See Thermtron Prods. v. Hermansdorfer*, 423 U.S. 336, 344, 96 S.Ct. 584, 589, 46 L.Ed.2d 542 (1976). As this court said in *Taylor v. Oxford*, 575 F.2d 152 (7th Cir.1978): "Innovative experiments may be admirable, and considering the heavy case loads in the district courts, understandable, but experiments must stay within the limitations of the statute." *Id.* at 154.

## Conclusion

Because we conclude that the parameters of Rule 16 do not permit courts to compel parties to participate in summary jury trials, the contempt judgment of the district court is vacated.

JUDGMENT OF CONTEMPT VACATED.

---

5. Legislation has been offered in Congress that would allow district courts to convene mandatory summary jury trials. *See* H.R. 473, 100th Cong., 1st Sess., 133 Cong.Rec. H.157 (daily ed. Jan. 7, 1987) ("Alternative Dispute Resolution Promotion Act of 1987"); S. 2038, 99th Cong., 2d Sess., 132 Cong.Rec. S.848 (daily ed. Feb. 3, 1986) ("Alternative Dispute Resolution Promotion Act of 1986").