**In re AIR CRASH DISASTER AT STAPLETON INTERNATIONAL AIRPORT, DENVER, COLORADO, ON NOVEMBER 15, 1987.**

MDL No. 751.

United States District Court,
D. Colorado.

Oct. 14, 1988.

ORDER MDL 751–12

MEMORANDUM OPINION AND ORDER ON MOTION TO VACATE OR MODIFY ORDER MDL 751–10, SETTING SETTLEMENT CONFERENCES

SHERMAN G. FINESILVER, Chief Judge.

The court is in receipt of a motion to vacate or modify Order MDL 751–10 filed by defendants Continental Airlines, Inc. and Texas Air Corp. ("Continental") on September 14, 1988. Certain plaintiffs responded to the motion on September 23, 1988. The court has reviewed Continental's motion and the authority cited therein as well as the Federal Rules of Civil Procedure and other authority relevant to the Order. The motion is DENIED.

I.

These cases arise out of the November 15, 1987 crash of a Continental Airlines DC–9 airplane en route from Denver, Colorado, to Boise, Idaho. Flight 1713, on takeoff in a snow storm at Stapleton International Airport, crashed, overturned, and broke into several pieces. The accident killed 28 persons and injured 54 others. The pilot, copilot and a flight attendant were among the dead. The National Transportation Safety Board conducted an investigation into the crash and reported its findings last week, on September 27, 1988.

Plaintiffs are residents of various states, including Arizona, Colorado, Idaho, New Jersey, and Washington. They claim the crash of Flight 1713 was the result of pilot inexperience, ineffectual pilot training and the willful, wanton and reckless disregard for passenger safety exhibited by defendant Continental Airlines. Plaintiffs also contend that Continental engaged in a pattern and practice of falsifying pilot training records, check airmen, and other records in order to meet its demand for new-hire pilots and to pass Federal Aviation Administration ("FAA") inspections. Finally, plaintiffs allege Continental engaged in deceptive trade practices in its 1987 advertising campaign designed to induce the public to purchase tickets without factual support for the matters presented therein.

Defendants deny that they were negligent, that they misrepresented anything, or that any wrongdoing on their part caused the crash. Defendants assert that plaintiffs' damages were caused by the acts, omissions, and/or fault of third parties over whom Continental has no control. Specifically, defendants have designated the City and County of Denver and the Federal Aviation Administration as culpable parties pursuant to C.R.S. § 13–21–111.5.

The court has jurisdiction over these civil actions pursuant to 28 U.S.C. § 1332, diversity of citizenship. On April 14, 1988, the Judicial Panel on Multidistrict Litigation conferred jurisdiction upon this court for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *In re Air Crash*

*Disaster at Stapleton Int'l Airport,* 683 F.Supp. 266 (J.P.M.L.1988).

## II.

In Order MDL 751–10, this court found 1) that the claims stated above and the posture of the remaining cases pending before it lent themselves to settlement, 2) that the anticipated cost and breadth of the litigation to come demanded that the parties make every effort to explore resolution of the cases before trial, and 3) that while the effectiveness and ability of the court to mediate settlement conferences had been exhausted in settling 16 out of 36 cases during previous settlement conferences, an additional round, without the intervention of the court, was likely to be productive in the hands of experienced counsel like we find in these cases.[1] Citing the authority conferred by Rule 16 of the Federal Rules of Civil Procedure, the court then directed the parties to meet to discuss settlement of each of the 20 remaining cases. The Order set out a schedule of weeks in which conferences were to be held at the parties convenience, extending from the week of September 26, 1988 through the week of November 3, 1988. The Order also directed that the conferences be held in the offices of each plaintiff's attorney and that each of the parties be represented by counsel and an individual other than counsel with authority to make settlement decisions.

Continental, and more particularly its insurer United States Aviation Underwriters ("USAU"), whose representatives Continental contends have actual settlement authority, have moved the court to vacate or modify the order. Continental and USAU argue that the court's order exceeds its authority, that since USAU is not a party to the suit, its representatives are beyond the court's subpoena power and thus its jurisdiction, and that although they are willing to continue to negotiate, since the airline defendants have made their final settlement offers, discussions outside the presence of a judge or magistrate would be a "waste of everyone's time and energy." Defendant's Motion, p. 5.

In its original motion, Continental (and USAU) informed the court that it would be willing to comply with an order setting settlement conferences, as it had in the past, so long as the order set conferences according to certain terms—that they be before a judge or magistrate in a neutral forum other than that of plaintiff's counsel, that they be scheduled more conveniently to consolidate the travel of USAU representatives and that they be held in the districts from which a particular case was transferred or Denver, Colorado. After an initial review of the authorities, the court twice directed the parties to go forward with conferences set for the first two weeks of the schedule set out in MDL 751–10, pending issuance of this order.

On October 3, 1988, Continental informed the court that in order to preserve its objection, Continental was not proceeding as directed but had sent and intended to continue to send only counsel to the conferences, pending issuance of this order, that counsel would have authority to agree to the settlement terms previously offered by Continental, and that no representatives of Continental other than counsel would attend.

## III.

Continental's original motion to vacate or modify included an admission of willingness to negotiate and an acknowledgement that it had complied with the court's previous orders setting settlement conferences without objection. These admissions and its proposal of an alternative order with which it would comply defeat Continental's argument that the order reaches USAU officials who fall outside it jurisdiction.

■ MDL 751–10 is directed at corporate defendants over whom the court does have jurisdiction, by diversity of citizenship originally and additionally by the consolidation order of the Judicial Panel on Multidistrict Litigation pursuant to 28 U.S.C. § 1407. The court has authority to order the attendance of corporate officers or employees other than counsel at pretrial proceedings

---

**1.** The relevant portion of our Order MDL 751–10 is published as an addendum to this opinion.

The schedule of settlement conference dates and locations has been omitted.

when appropriate in the circumstances. *See, e.g., Brockton Savings Bank v. Peat, Marwick, Mitchell & Co.,* 771 F.2d 5, 10–11 (1st Cir.1985), *cert. denied,* 475 U.S. 1018, 106 S.Ct. 1204, 89 L.Ed.2d 317 (1986) (upholding district court's order of appearance by corporate officers to resolve discovery dispute as based in court's inherent authority to manage its docket); *In re LaMarre,* 494 F.2d 753, 756 (6th Cir, 1974) (district court has authority to order appearance of insurer's claims agent with decision authority to appear at settlement conference where insurer is required to defend an action by contract as if insurer was a party to the litigation). In so doing, the court exercises its jurisdiction over a corporate defendant and orders the corporation to designate a representative to fill the role established by the court's order, be it with authority to provide information for discovery or to authorize a negotiated settlement. Therefore, the appropriateness of such an order is issue of the court's authority in the circumstances, not of its jurisdiction over parties to litigation on its docket.

■ Accordingly, the transferee court in a consolidated multidistrict case has jurisdiction to order a corporation properly before it to designate individuals with certain authority to attend certain conferences. This jurisdiction is not limited by the court's Rule 45 subpoena power. *Brockton Savings Bank,* 771 F.2d at 10. Continental has admitted as much, if not having formally waived its jurisdictional objection, by previously responding in accordance with similar orders of this court and by stating that USAU representatives will attend conferences ordered by the court according to certain terms. A corporation cannot avoid a court's orders simply by asserting that the individual in whom its board has decided to vest such authority resides beyond the subpoena power of the court. Nor can a party properly before a court specify the manner in which that court may exercise its authority in the guise of a jurisdictional argument. The resistance of USAU representatives to attending the settlement conferences is a matter of contractual obligation to be addressed between insurer and insured.

## IV.

■ The preceding discussion demonstrates that Continental's argument is, at base, an assertion that Order MDL 751–10 is beyond the authority conferred on this court by Rule 16 of the Federal Rules of Civil Procedure. The court holds that it is not. A transferee judge in consolidated, multidistrict litigation has the authority to order that settlement conferences take place without the intrusion of judge or magistrate in various locations if, viewing the totality of the circumstances, that order is not an abuse of discretion.

The Tenth Circuit has held that organizational orders under Rule 16 are a matter within the discretion of the trial court. *Matter of Sanction of Baker,* 744 F.2d 1438, 1440 (10th Cir. en banc 1984), *cert. denied,* 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985). The Circuit court held that the judge in making such orders exercises discretion within the context of the specific case at issue, its total management problems, and the access and cost problems faced by the litigants. *Id.* The Circuit reviewed the 1983 amendments to Rule 16, language changes to which many of Continental's arguments are attached, and found that the Rule's pretrial management provisions were designed to allow the court to address these problems within the setting of a particular case. *Id.* "While on the whole, Rule 16 is concerned with the mechanics of pretrial scheduling and planning, its spirit, intent and purpose is clearly designed to be broadly remedial, allowing courts to actively manage the preparation of cases for trial." *Id.*

In a consolidated multidistrict case, the goal of efficiency takes on special importance and broadens the range of alternatives available to address the unique characteristics of geographically disbursed parties, witnesses and attorneys as well as the complexity of the issues frequently involved in such litigation. The distinctive nature of the authority vested in a transferee judge is apparent from the language contained in most multidistrict consolidation orders. The Judicial Panel frequently reminds transferee judges that their authority extends to ordering pretrial activi-

ties in individual cases to be conducted concurrent with the pretrial activities involved in the larger consolidated case when to do so would suit the particular needs of an individual case. *See, e.g., In re IBP Confidential Business Documents Litigation,* 491 F.Supp. 1359, 1362 (J.P.M.L.1980) (citing cases); *In re Petroleum Products Antitrust Litigation,* 419 F.Supp. 712, 713 (J.P.D.L.1976).

A district court in New York recently found that the amendments to Rule 16(c), regarding various options to be considered in the pretrial phases of a case, were designed to increase the court's "flexibility, resource and discrimination." *Seck by Seck v. Hamrang,* 657 F.Supp. 1074, 1076 (S.D.N.Y.1987). The court concluded, "A given technique may be appropriate in one case and not another." *Id.* The combined effect of the court's inherent authority to control its docket and Rule 16(c)(7) and (c)(10) is to allow the court to carefully consider the applicability of various devices to pursue pretrial settlement of a case. *Strandell v. Jackson County, Illinois,* 838 F.2d 884, 886 (7th Cir.1987); *see also* Fed. R.Civ.P. 83 ("In all cases not provided for by rule, the district judges ... may regulate their practice in any manner not inconsistent with these rules or those of the district in which they act.").

Accordingly, the limits of the authority conferred by Rule 16 are determined as much by the circumstances of the particular case as by the language of the Rule. The Rule provides a framework through which the goals of efficiency and expediency are to be pursued. The task of the court is to select a particular pretrial settlement device within that framework and to match that device to the circumstances involved in a particular case. As the Rule instructs, the device must be one that facilitates settlement without losing sight of the court's ultimate duty to provide a fair forum for litigation. *See Strandell,* 838 F.2d at 887.

■ Cases cited by Continental that find certain case management devices inappro-

priate are not inapposite. The cases fall into two categories: (1) those finding an abuse of discretion where the court has gone beyond facilitation and attempted to force a particular resolution on a party, and (2) those finding an abuse of discretion where the device chosen requires parties to disclose particular strategies or evidence which would prejudice their presentations at trial. *Compare Kothe v. Smith,* 771 F.2d 667, 669 (2nd Cir.1985) (sanctioning failure to take settlement offer judge found satisfactory before trial which attorney then accepted during trial held unduly coercive); *with Strandell,* 838 F.2d at 886–87 (7th Cir.1987) (specifically addressing the "narrow question before us—the legality of *compelled* participation in a summary jury trial" and finding that the order unduly prejudiced discovery and work-product rules); *cf. Arabian American Oil Co. v. Scarfone,* 119 F.R.D. 448 (M.D.Fla.1988) (specifically rejecting the *Strandell* finding of undue prejudice); *see also Identiseal Corp. of Wisconsin v. Positive Identification Sys., Inc.,* 560 F.2d 298 (7th Cir.1977); *J.F. Edwards Construction Co. v. Anderson Safeway,* 542 F.2d 1318 (7th Cir. 1976) *and Lockhart v. Patel,* 115 F.R.D. 44, 46 (E.D.Ky.1987) (each distinguishing between the power to order appearance and the power to coerce a particular resolution). Accordingly, the language of the *Strandell* court comments to the Rule 16 amendments quoted by Continental, asserting that courts should not force settlement on unwilling participants, must be viewed in light of these broad parameters. MDL 751–10 is not an abuse of this court's discretion as long as, based on the totality of the circumstances of these consolidated cases, the Order does not prejudice their ultimate litigation or coerce a particular resolution.

In general, the circumstances in these cases support the following conclusions.

Continental has expressed its desire to continue to participate in settlement conferences. Thus, the corporate defendants are willing participants in the process.[2]

**2.** As we read Continental's motion, it appears that defendants' willingness to participate in the settlement negotiations is conditioned on Continental's establishing the ground rules and deter-

mining the parameters of the discussions. True negotiation requires resiliency and flexibility in the exchange of concepts and settlement figures.

The settlement conferences established in MDL 751–10 in no way require the disclosure of evidence or strategy to the detriment of the parties' presentations at trial. The Order is not prejudicial to the ultimate litigation of these cases.

MDL 751–10 does not require Continental or any plaintiff to accept a particular resolution of the case. The agenda for the conferences, although not specified in the Order, is likely to be the same as it has been in the previous rounds in which Continental participated without objection.

Thus, the MDL 751–10 is within the parameters of the court's Rule 16 authority to facilitate settlement.

## V.

Continental argues that the court should recognize three additional limitations on its Rule 16 authority and modify MDL 751–10 accordingly. Continental contends 1) that the court can not order settlement negotiations outside the presence of a judge or magistrate, 2) that the court has no authority to order the appearance of represented parties, but may only order the appearance of their counsel, and 3) that the court may not impose an undue financial burden on parties by ordering settlement conferences in diverse locations. Each argument will be addressed in turn.

■ Continental questions the propriety of the court's selection of a device which does not include judicial participation in a non-neutral setting. As discussed above, the court's decision to pursue the settlement device outlined in MDL 751–10 is based in its experience in previous rounds of settlement negotiations in this litigation. The court found that at this stage, the formality or judicial intrusion might frustrate further progress toward settlement. Throughout this litigation, counsel has acted in a professional manner. The court concluded that in this atmosphere, neither Continental's attorneys nor their representatives would be entering a prejudicially hostile environment by meeting to negotiate at plaintiff counsel's offices. If in the unlikely event that such hostility did arise,

Continental's experienced counsel in Colorado and Idaho would be able to address the situation. Nothing has transpired since MDL 751–10 was issued to convince the court that hostility is now a more likely result of these meetings. Accordingly, the court does not find that the manner and location of the conferences unduly prejudices Continental.

■ Continental's second objection focuses on the court's decision to require attendance by representatives of parties other than counsel who have settlement decision authority. The jurisdictional side of this argument has already been addressed. While one court has found that the Rule 16 distinction between counsel and unrepresented parties limited a court's authority to order attendance at pretrial proceedings by represented parties, that opinion has been vacated pending rehearing *en banc*. See *G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 848 F.2d 1415 (7th Cir.1988), *rehearing en banc granted*, 848 F.2d at 1427 (July 22, 1988). Viewed from the perspective of the undue prejudice limitations outlined above, a more appropriate interpretation of the Rule's distinction is that the court may not order the appearance of represented parties at pretrial proceedings without the presence of counsel. To do so would not only bear the risk of prejudicial revelations of evidence or strategy, but also would be contrary to our system of advocacy.

The court's power to order settlement conferences would be practically vacuous if a district judge could not compel the attendance of parties. *Cf. Berger v. Brannan*, 172 F.2d 241, 243 (10th Cir.1949), *cert. denied*, 337 U.S. 941, 69 S.Ct. 1519, 93 L.Ed. 1746 (1949) (without power to order parties to meet and stipulate as to issues about which there can be no dispute, Rule 16 pre-trial power re: stipulations would be "innocuous and of little help"). Substantial delay often results when lawyers authorized to negotiate to a certain point and no further must bring a halt to productive negotiations and wait several days while

---

Obdurate, recalcitrant and rigid positions are antagonistic to the spirit of the Rule 16 negotiations in which defendants admit to being willing participants.

the latest best offer is considered by a corporate party. Immediate decision making is critical to the process of exchange involved in true negotiation. Because of the administrative machinery involved in consolidated multi-district cases, however, substantial delay is inherent. The Manual for Complex Litigation, Second (1985), suggests that trial courts have authority to order the appearance of parties represented by counsel at settlement conferences. The Manual discusses the value of attendance by parties at settlement conferences and of negotiations without judicial intrusion, in terms of both efficiency and quality of negotiation. MCL.2d § 21.22 (citing authority for the court's power to order attendance by parties), § 23.12.

The court holds that ordering the attendance of representatives other than counsel with settlement authority at settlement conferences is within a trial courts authority in cases like this where attendance will not prejudice the parties' presentations at trial. Given the circumstances of these cases and the court's knowledge of the course of the litigation to date, the court finds that the conferences are likely to promote the efficient resolution of these cases by providing a forum for dialogue as yet untried in this litigation. Furthermore, in light of the recent release of the National Transportation Safety Board's report on the crash, the remaining conferences may well address substantive issues not discussed in previous rounds. *See Lockhart v. Patel,* 115 F.R.D. 44, 46 (E.D.Ky.1987) (court's authority to require parties, attorneys, and insurers to attend settlement conferences and to impose sanctions if those orders are violated is well established).

Third, Continental objects to the financial burden it claims MDL 751–10 imposes by requiring its representatives to travel to different locations over a period of time. We note that defendants have retained two law firms to represent their interests in the District of Colorado and two additional law firms to represent those interests in the District of Idaho. Defendant Continental Airlines' insurer, United States Aviation Underwriters ("USAU") has sent two senior representatives to virtually every settlement conference held in both Idaho and Colorado to date. Thus, any argument that settlement conferences impose an unnecessary financial burden on Continental is not supported by defendants previous actions. Continental itself has imposed cumbersome machinery on the process of negotiation in this litigation and the goal of MDL 751–10 is to reduce the burdens of that machinery.

One of the special responsibilities charged to a transferee judge is to attempt to minimize the costs multidistrict litigation imposes on the parties. Throughout the course of this litigation, the court has attempted to distribute the economic burdens imposed on the parties by its orders as equitably as possible. In multidistrict cases, protracted geography and responsibility cause the delay which consolidation and the managerial authority vested in a single judge are designed to prevent. The attendance of the parties and the settlement negotiations themselves are intended by the court to reduce these overall burdens. The court finds that the balance of costs attributable to this litigation do not unduly burden Continental.

## VI.

The court finds that viewing the conferences established in MDL 751–10 in light of the totality of the circumstances involved in these consolidated cases, the Order is well within the court's Rule 16 discretion. A cursory review of the case files confirms our earlier opinion that many of the 20 remaining cases lend themselves to settlement. No doubt some cases will settle shortly before trial, but we encourage serious settlement discussions at this juncture to minimize the cost of this litigation and reduce the expenditure of time and effort by counsel and court. The fundamental precept of the Federal Rules of Civil Procedure must be kept in mind while preparing for trial: "[The Rules] shall be construed to secure the just, speedy, and inexpensive determination of every action." Fed.R. Civ.P. 1. Accordingly,

Defendants' motion to vacate or modify order MDL 751–10 is DENIED. The Order

stands and with reference to Continental's Notice and Request to Stay, filed October 3, 1988, Continental is DIRECTED to comply with all provisions of Order MDL 751–10 from this date forward, including persons in attendance and reports to be filed with the court. The court presumes that the remaining conferences will not be pro forma but will proceed in the spirit of Rules 1 and 16 of the Federal Rules of Civil Procedure. We expect that in accordance with defendant Continental's professed willingness to negotiate, representatives other than counsel who have actual authority to resolve cases will attend and actively participate in the discussions. We anticipate that all counsel will cooperate in the settlement phase of this protracted litigation in the spirit and tenor of Rule 16 of the Federal Rules of Civil Procedure and Order MDL 751–10. *Cf. State of Ohio v. Crofters, Inc.*, 75 F.R.D. 12, 21 (D.Colo.1977), *aff'd sub nom., State of Ohio v. Arthur Anderson & Co.*, 570 F.2d 1370 (10th Cir. 1978), *cert. denied*, 439 U.S. 833, 99 S.Ct. 114, 58 L.Ed.2d 129 (1978) ("Cooperation among counsel is not only helpful, but required, and the court has the duty to ensure that such cooperation is forthcoming.").

## ADDENDUM

## ORDER MDL 751–10

## RE SETTING SETTLEMENT CONFERENCES

SHERMAN G. FINESILVER, Chief Judge.

THESE CASES arise from the November 15, 1987, crash of a Continental Airlines DC–9 airplane en route from Denver to Boise, Idaho. Flight 1713, on takeoff in a snow storm at Stapleton International Airport, crashed, overturned, and broke into several pieces. The accident killed 28 persons and injured 54 others. The pilot, copilot, and a flight attendant were among the dead. The cause of the accident is under investigation by the National Transportation Safety Board.

### I.

Plaintiffs are residents of various states, including Arizona, Colorado, Idaho, New Jersey, and Washington. They claim the crash of Flight 1713 was the result of pilot inexperience, ineffectual pilot training, and the willful, wanton, and reckless disregard for passenger safety exhibited by defendant Continental Airlines ("Continental"). Plaintiffs also contend Continental engaged in a pattern and practice of falsifying pilot training records, check airmen, and other records in order to meet its demand for new-hire pilots and pass Federal Aviation Administration ("FAA") inspections. Finally, plaintiffs allege Continental engaged in deceptive trade practices in its 1987 advertising campaign designed to induce the public to purchase tickets without factual support for the matters represented therein.

Defendants Continental and Texas Air Corporation ("Texas Air") deny they were negligent, misrepresented anything, or committed any other wrongdoing which caused the crash. Defendants assert that plaintiffs' damages were caused by the acts, omissions, and/or fault of third parties over whom Continental and Texas Air have no control. Specifically, Continental and Texas Air have designated the City and County of Denver and the Federal Aviation Administration as culpable nonparties pursuant to C.R.S. § 13–21–111.5.

The court has jurisdiction over these civil actions pursuant to 28 U.S.C. § 1332, diversity of citizenship. On April 14, 1988, the Judicial Panel on Multidistrict Litigation conferred jurisdiction upon the court for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *In re Air Crash Disaster at Stapleton Int'l Airport*, 683 F.Supp. 266 (J.P.M.D.L.1988).

### II.

The court is of the view that the instant cases are the types which lend themselves to settlement. The trials of these cases will be protracted and expensive. Due to the anticipated cost of litigation, length of trials, and nature of the lawsuits, the court is satisfied that definitive settlement discussions should be held, at which time every effort should be made to explore resolution of the cases.

To this end, the court previously has presided at settlement conferences in these related cases in Denver, Colorado, and Boise, Idaho. Sixteen of the thirty-six cases filed in federal court have been resolved. Although we are of the view that judicial mediation has contributed to the success of these conferences, the court can no longer devote such extensive judicial resources in this manner. Rather, the court will rely upon the considerable experience of counsel to resolve the cases without trial, if this can be accomplished without violating the parties' principles. Accordingly,

Pursuant to our authority under Rule 16 of the Federal Rules of Civil Procedure, the court DIRECTS the parties to hold settlement conferences in the offices of plaintiffs' counsel. *These dates shall not be extended or otherwise modified except upon joint motion of the parties for good cause shown.* The litigants are advised of dates certain in the attached addendum. Representatives of all parties, with full settlement authority, shall attend the settlement conference and participate fully in all negotiations. *The court expressly notes that the presence of counsel of record does not fulfill the requirement of the presence of an individual with settlement authority.* Settlement discussions may extend for more than one day. Counsel and the principals should make arrangements to participate in all sessions. Evening negotiations may be necessary as well. A suitable conference room for settlement discussions should be provided. Counsel for plaintiffs should contact opposing counsel to set a date, time, and location certain. Use of a telephone conference does not satisfy this order.

The court directs counsel and the litigants to fully prepare to negotiate a settlement at this conference. The court encourages advance preparation and continuing discussions among counsel and the parties prior to the conferences. In order that productive settlement discussions may be held, the court directs that the parties exchange briefs addressing the following questions in the order specified below:

1. Provide a concise statement of the case;

2. Provide a concise statement of the law governing an award of damages, attaching copies of the relevant statutes and case law supporting your position;

3. For plaintiff(s): If you prevail, what amount of damages do you believe you will recover and why?

4. For defendants: If plaintiff prevails, what is the upper limit of damages that you believe plaintiff may recover and why?

5. For all parties: What is your reasonable offer to settle the case?

6. Are there any issues of fact or law in dispute that bear on the issue of damages? Provide a concise statement outlining the nature of the dispute and support your position with relevant statutory and case law.

These statements are for the sole purpose of facilitating settlement negotiations and will not be filed in the lawsuits nor shared with the court. Position papers shall be exchanged five (5) working days prior to the conference. The information requested is in the nature of an offer to compromise as set forth in Rule 408 of the Federal Rules of Evidence.

The court further DIRECTS that the parties jointly report the results of their conferences to the court by the dates set forth herein. These reports shall include: (1) the name of the case; (2) the case number; (3) the date and location of the conference; (4) the duration of the conference; (5) the names of the parties present; (6) the names of counsel in attendance; (7) the general prospects for settlement and any barriers thereto; and (8) the scheduling of future negotiating sessions. Counsel should not reveal settlement figures exchanged by the parties. However, the court directs that the parties' set forth the sequence and status of negotiations in the case.

Experience has demonstrated that, with the cooperation of counsel and the principals, a considerable number of cases can be settled in advance of trial, minimizing the cost of litigation and conserving the time of the court, the attorneys, the parties, and their witnesses. Counsel are directed to

share this order with their clients, including individual plaintiffs and defendants' executive officers.

IT IS SO ORDERED.

Done this 2 day of September, 1988, in Denver, Colorado.