**George G. MILLS, Sr., John F. Kavalick, Harvey Schirrmacer and Gary Forsythe, Plaintiffs-Appellants,**

v.

**William H. KILLEBREW, Jeffery H. Feldman and Gregory E. Snow, jointly and severally, Defendants-Appellees.**

### No. 84–1399.

United States Court of Appeals, Sixth Circuit.

Argued May 1, 1985.

Decided June 11, 1985.

Barry D. Herbach—Lead Counsel (argued), Stockler & Herbach, P.C., Southfield, Mich., for plaintiffs-appellants.

Joseph Walker, Christine D. Oldani—Lead Counsel (argued), Detroit, Mich., for defendants-appellees.

Before ENGEL and MARTIN, Circuit Judges, and TIMBERS, Circuit Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

Appellants, winners in a forced mediation case, seek reversal of the order of dismissal entered against them in their action brought under 42 U.S.C. §§ 1983, 1985, and 1986. The district court held that the appellees were entitled to absolute quasi-judi-

* Honorable William H. Timbers, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

cial immunity and therefore could not be held liable to the appellants for damages. We affirm.

The appellants were the plaintiffs in a state court proceeding in Wayne County Circuit Court entitled *Mills v. Franco*. Pursuant to Wayne County Circuit Court Rule 403, the plaintiffs were ordered to submit their case to mediation. Rule 403 states in relevant part:

**Rule 403   Mediation**

**.1   Eligible Cases.**

The court may submit any civil case to mediation when the relief sought is exclusively money damages or division of property.

**.2   Manner of Selection of Cases.**

A case may be selected for mediation:

(1) by stipulation of the parties at any time as long as mediation does not interfere with trial of the case,

(2) on written motion by a party and order of the court, or

(3) on order of the chief judge.

**.3   Objections to Mediation.**

To object to mediation, a party must:

(1) file a written motion with the clerk of the court and a copy with the mediation tribunal clerk within 15 days after the date of the court's notice assigning the case to mediation, and

(2) serve a copy on opposing counsel and the chief judge.

If the motion is filed, the case may not be assigned for a mediation hearing until the chief judge, or a judge he assigns, has ruled on it.

**.4   Mediation Board.**

(a) Mediation boards will be composed of three attorneys.

(b) The Mediation Tribunal Association shall select the mediators.

.   .   .   .   .

**.7   Procedure for Mediation.**

.   .   .   .   .

(e) Action on Board's Decision. Written acceptance or rejection of the board's evaluation must be given to the tribunal clerk within 40 days of the mailing of the board's evaluation. There may be no disclosure of a party's acceptance or rejection of the board's evaluation until the expiration of 40 days following notification. At the expiration of the above period, the tribunal clerk shall send a notice indicating each counsel's acceptance or rejection of the board's evaluation. If the evaluation of the mediation board is rejected, the tri-tribunal clerk shall place all mediation documents in a sealed manila envelope before forwarding them to the County Clerk for filing. The envelope may not be opened in a nonjury case until the trial judge has rendered judgment.

.   .   .   .   .

**.15   Effect of Mediation.**

(a) If the board's evaluation is not rejected under rule 403.7(c), a judgment will be entered in that amount, which includes all fees, costs and interest to the date of judgment.

(b) If any party rejects the board's evaluation, the case proceeds to trial in the normal fashion. If the evaluation is $10,000 or less, a date for hearing before the chief judge will be set for the purpose of determining whether the case should be removed to the district court. A notice of hearing will be served on counsel for the parties at least 5 days before the hearing date. The chief judge will enter an order of removal unless objection to removal is made at the hearing. The penalty provisions still apply to cases which are removed.

(c) When the board's evaluation is unanimous and the defendant accepts the evaluation but the plaintiff rejects it and the matter proceeds to trial, the plaintiff must obtain a verdict in an amount which, when interest on the amount and assessable costs for the date of filing of the complaint to the date of the mediation evaluation are added, is more than 10 percent great-

er than the board's evaluation in order to avoid the payment of actual costs to the defendant.

(d) When the board's evaluation is unanimous, and the plaintiff accepts the board's evaluation but the defendant rejects it and the matter proceeds to trial, the defendant must obtain a verdict in an amount which, when interest on the amount and assessable costs from the date of filing of the complaint to the date of the mediation evaluation are added, is more than 10 percent below the evaluation of the board or pay actual costs.

(e) When the board's evaluation is unanimous and both parties reject the board's evaluation and the amount of the verdict, when interest on the amount and assessable costs from the date of filing of the complaint to the date of the mediation evaluation are added, is within 10 percent above or below the board's evaluation, each party is responsible for his own costs from the mediation date. If the verdict is in an amount which, when interest on the amount and assessable costs from the date of filing of the complaint to the date of the mediation evaluation are added, is more than 10 percent above the board's evaluation, the defendant shall be taxed actual costs. If the verdict is in an amount which when interest on the amount and assessable costs from the date of filing of the complaint to the date of the mediation evaluation are added, is more than 10 percent below the board's evaluation, the plaintiff shall be taxed actual costs.

The appellants did not object to the mediation order. A mediation panel awarded the appellants $18,000, and the appellants failed to reject the award within the time period provided by Rule 403.7(e). The appellants therefore were deemed to have accepted the mediation award under Rule 403.15.

The appellants then filed the present action in federal court against the three law-

yers who served on the mediation panel. The appellants allege that the mediation process somehow violated their fourteenth amendment rights to equal protection and due process. They did not ask for declaratory or injunctive relief, but sought only damages for their alleged injuries. The district court found that the mediators serve a quasi-judicial function and were absolutely immune from damages, and the court therefore dismissed the action pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Johnson v. Granholm*, 662 F.2d 449, 450 (6th Cir.1981), *cert. denied*, 457 U.S. 1120, 102 S.Ct. 2933, 73 L.Ed.2d 1332 (1982); *Campbell v. Patterson*, 724 F.2d 41, 43 (6th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1613, 80 L.Ed.2d 142 (1984).

The appellants do not nor can they contest that the mediators serve a quasi-judicial function and should normally be entitled to immunity, but they instead argue that the use of mediation panels in Michigan is unconstitutional under the Michigan constitution and that the mediators were therefore without jurisdiction to mediate the case. Because the mediators were without jurisdiction, as their argument goes, they lost their immunity pursuant to *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), where the Supreme Court held that a judge can lose his absolute immunity if "he has acted in the 'clear absence of all jurisdiction.'" *Id.* at 357, 98 S.Ct. at 1105 (citations and footnote omitted). *See also Pulliam v. Allen*, —— U.S. ——, 104 S.Ct. 1970, 1983, 80 L.Ed.2d 565 (Powell, J., dissenting).

■ Thus, for the appellants' argument to be correct, the mediators must not only have acted without jurisdiction, they must have acted in the *clear* absence of all jurisdiction. A judicial officer acts in the clear absence of jurisdiction only if he knows that he lacks jurisdiction, or acts despite a clearly valid statute or case law expressly depriving him of jurisdiction. *Rankin v. Howard*, 633 F.2d 844, 849 (9th Cir.1980); *cert. denied*, 451 U.S. 939, 101 S.Ct. 2020, 68 L.Ed.2d 326 (1981). *See also Dykes v.*

*Hosemann,* 743 F.2d 1488, 1497 (11th Cir. 1984), *reh'g en banc granted,* 743 F.2d 1505 (11th Cir.1984). In this case, there is no statute or case law expressly depriving the mediators of jurisdiction. In fact, there is constitutional and statutory support for jurisdiction. Rule 403 was adopted as a local rule with the approval of the Michigan Supreme Court. *See MGM Brakes Division of Indianhead, Inc. v. Uni-Bond, Inc.,* 111 Mich.App. 467, 315 N.W.2d 170 (1981). Mich. Const. art. VI, § 5 provides in part that "the [Michigan] Supreme Court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of [Michigan]." Moreover, Mich.Comp.Laws Ann. § 600.223 allows the Michigan Supreme Court "to promulgate and amend general rules governing practices and procedure in the Supreme Court and all other courts of record...." Given those provisions, we do not believe there was any clear statutory or constitutional proscription against mediation.

■ Although appellants allege in their complaint that the mediators knew they were without jurisdiction, we find this conclusory allegation to be legally impossible. As was just discussed, no clearly valid statute or case law would apprise the mediators of their alleged lack of jurisdiction. In fact, the appellants in this case are presently trying to get a ruling on the constitutionality of the mediation rule in state court. We do not see how the appellees, who must simply follow the dictates of the Michigan Supreme Court, could possibly know that the mediation rule was unconstitutional—if, in fact, it is—without guidance from the Michigan courts or the state legislature.

The order of the district court is affirmed.