906 F.2d 1100
 Alias Amanuel ALIA, Plaintiff-Appellant,
and
George G. Mills, Sr., John F. Kavalick, Harvey Schirrmacher,
and Gary Forsythe, Plaintiffs,
v.
MICHIGAN SUPREME COURT, Dorothy Comstock Riley, Charles L.
Levin, James H. Brickley, Michael F. Cavanagh, Patricia J.
Boyle, Dennis W. Archer and Robert P. Griffin, Jointly and
Severally, Defendants-Appellees.
 No. 88-2095.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 8, 1989.
Decided June 22, 1990.
Rehearing and Rehearing En Banc
Denied Aug. 30, 1990.
 
 Lawrence J. Stockler (argued), Lawrence J. Stockler & Associates, Southfield, Mich., for plaintiffs-appellants.
 Michael C. McDaniel (argued), Office of the Atty. Gen., Tort Defense Div., Lansing, Mich., for defendants-appellees.
 Before WELLFORD, GUY, and BOGGS, Circuit Judges.
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Plaintiffs brought this civil rights action alleging that the Michigan Supreme Court exceeded its authority in promulgating a mediation rule. The district court granted defendants' motion for dismissal pursuant to Federal Rule of Civil Procedure 12(b) on the basis that defendants are entitled to eleventh amendment immunity and qualified judicial immunity. The district court also imposed a $500 sanction against plaintiffs' attorney pursuant to Rule 11 of the Federal Rules of Civil Procedure. Plaintiff Alia appeals the dismissal and the imposition of sanctions. Upon review, we affirm the dismissal, but for reasons somewhat different than those relied upon by the trial court. The order imposing sanctions is reversed, since both Judge Wellford and Judge Boggs have dissented from my view that the sanctions were appropriate.I.
 
 
 2
 This federal action grows out of two separate state lawsuits. In the first lawsuit, plaintiffs Mills, Kavalick, Schirrmacher, and Forsythe filed a civil action in the Wayne County, Michigan, Circuit Court. Pursuant to Wayne County Local Rule 403 governing mediation, plaintiffs' claim was mediated. Plaintiffs filed a rejection of the mediation recommendation, but it was either not received or not timely noted and the mediation evaluation was deemed accepted. Plaintiffs then appealed to the Michigan Court of Appeals, and that court reversed the judgment. Mills v. Franco Food Equip., Inc., 161 Mich.App. 376, 409 N.W.2d 829 (1987). However, the Michigan Supreme Court reversed the court of appeals and reinstated the judgment. Mills, 429 Mich. 875, 414 N.W.2d 888 (1987). The United States Supreme Court denied certiorari. Mills, 486 U.S. 1033, 108 S.Ct. 2017, 100 L.Ed.2d 604 (1988). These plaintiffs also filed suit in federal court against the mediation panel. This court held that the members of the mediation panel were entitled to immunity and affirmed the district court's dismissal of the case. Mills v. Killebrew, 765 F.2d 69 (6th Cir.1985).
 
 
 3
 In the other lawsuit, plaintiff Alia filed a civil action in Oakland County, Michigan, Circuit Court. Over plaintiff's objection, the circuit court judge ordered that the claim be mediated pursuant to the applicable Oakland County Rules. Following mediation, plaintiff accepted the recommendation of the mediation panel and the parties entered into a settlement agreement. Both the Oakland County and Wayne County mediation rules were adopted pursuant to authority contained in Michigan Court Rule 2.403, which states in pertinent part:
 
 
 4
 (A) Scope and Applicability of Rule.
 
 
 5
 (1) A court may submit to mediation any civil action in which the relief sought is primarily money damages or division of property. However, MCR 3.211 governs mediation of domestic relations actions.
 
 
 6
 (2) Mediation of tort cases is mandatory beginning with actions filed after the effective dates of Chapters 49 and 49A of the Revised Judicature Act, as added by 1986 PA 178; however, the court may except an action from mediation on motion for good cause shown if it finds that mediation of that action would be inappropriate.
 
 
 7
 Mich.Stat.Ann.Rules 1.
 
 
 8
 All five of these plaintiffs then filed a 42 U.S.C. Sec. 1983 action in federal district court against defendants Michigan Supreme Court and its seven justices. Plaintiffs alleged that defendants "violated the plaintiffs' civil rights and rights to equal protection of the laws" by promulgating Michigan Court Rule 2.403. Plaintiffs sought money damages, attorney fees, and declaratory and injunctive relief. Defendants subsequently filed a motion to dismiss, pursuant to Fed.R.Civ.P. 12, asserting numerous grounds warranting dismissal. The district court, in granting the dismissal, addressed two of those grounds, namely that defendants were entitled to immunity under the eleventh amendment and were also entitled to qualified judicial immunity. In addition, the district court found that plaintiffs' complaint was "frivolous" and, pursuant to Rule 11, ordered plaintiffs' attorney to pay $500 in sanctions. Plaintiff Alia now appeals the decision of the district court, the remaining four plaintiffs having elected not to appeal.
 
 II.
 
 9
 In Abick v. State of Michigan, 803 F.2d 874 (6th Cir.1986), we were faced with a similar challenge directed at the justices of the Michigan Supreme Court. At issue was Michigan Court Rule 2.103 dealing with service of process. In upholding the district court dismissal of the claim, we held:
 
 
 10
 [T]he justices of the Michigan Supreme Court[ ] claim that they have legislative immunity for any suit relating to the promulgation of Michigan Supreme Court Rule 2.103. A provision such as Rule 2.103 relating to service of process is a rule of practice and procedure. See Chovin v. E.I. DuPont De Nemours & Co., 217 F.Supp. 808, 811 (E.D.Mich.1963); Daniels v. Detroit, Grand Haven & Milwaukee Railway Co., 163 Mich. 468, 473-74, 128 N.W. 797, 806 (1910); Morrison v. Steiner, 32 Ohio St.2d 86, 89, 290 N.E.2d 841, 844 (1972). Article 6, Section 5 of the Michigan Constitution delegates the responsibility of promulgating court rules relating to practice and procedure to the Michigan Supreme Court. If the Michigan Supreme Court promulgates a rule which conflicts with a statute, the rule is followed. Buscaino v. Rhodes, 385 Mich. 474, 479-80, 189 N.W.2d 202, 204-06 (1971); Perin v. Peuler, 373 Mich. 531, 541, 130 N.W.2d 4, 10 (1964). The Michigan Supreme Court's promulgation of rules of practice and procedure is a legislative activity. See Supreme Court of Virginia v. Consumers Union of the United States, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980); Hirschkop v. Snead, 646 F.2d 149, 151 (4th Cir.1981); In re Oliver, 452 F.2d 111, 114 (7th Cir.1971). In Supreme Court of Virginia v. Consumers Union of the United States, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), the Court held that the justices of the Virginia Supreme Court enjoyed legislative immunity for a claim based on the promulgation of a set of rules to govern the Virginia Bar. The Supreme Court held that when promulgating these rules, the justices of the Virginia Supreme Court were acting in a legislative capacity and in fact were "the State's legislators." Id. at 734, 100 S.Ct. at 1975. As such, the justices were entitled to legislative immunity. Id. Similarly, the Justices of the Michigan Supreme Court were acting in their legislative capacity and therefore are entitled to legislative immunity.
 
 
 11
 803 F.2d at 877-78.
 
 
 12
 Our ruling in Abick is dispositive of plaintiffs' claim here. The immunity granted is immunity from suit and applies whether the relief sought is money damages or injunctive relief. We also note that we have earlier addressed the specific rule under attack here. Mills, 765 F.2d 69, was a challenge to the mediation rule brought by the same attorney who brings this challenge. Mills was also dismissed below by the same district judge involved here. The only difference was that Mills involved a suit against the mediators rather than the Michigan Supreme Court. In Mills, we stated:
 
 
 13
 Moreover, Mich.Comp.Laws Ann. Sec. 600.223 allows the Michigan Supreme Court "to promulgate and amend general rules governing practices and procedure in the Supreme Court and all other courts of record...." Given those provisions, we do not believe there was any clear statutory or constitutional proscription against mediation.
 
 
 14
 Id. at 72. Thus, despite the immunity enjoyed by the Michigan Supreme Court, we have, in dicta at least, addressed the merits of the challenge presented here.
 
 
 15
 Our holding does not mean that the mediation rule is insulated from attack but, rather, that a state forum instead of a federal one is appropriate. Any party feeling aggrieved by the requirement of mediation need only refuse to participate. The dismissal that would likely result could then be appealed and whatever infirmities are thought to exist in the rule could be raised and argued.[1]
 
 III.
 
 16
 Plaintiff also asserts on appeal that the district court erred in determining that the complaint was "frivolous" and thereby imposing a $500 sanction upon plaintiff's attorney. Plaintiff asserts that the district court specifically erred in not conducting an inquiry into whether plaintiffs' complaint was well-grounded in fact or warranted by existing law.
 
 
 17
 A district court's imposition of sanctions pursuant to Rule 11 is reviewed under an abuse of discretion standard. Mihalik v. Pro Arts, Inc., 851 F.2d 790, 793 (6th Cir.1988); Century Prods., Inc. v. Sutter, 837 F.2d 247, 250 (6th Cir.1988); INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc., 815 F.2d 391, 401-02 (6th Cir.), cert. denied, 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987).
 
 
 18
 Upon review, it is noted that the district court judge was very familiar with plaintiffs' claim, both from this case and his prior ruling in plaintiffs' counsel's previous case, Mills v. Killebrew. I find no abuse of discretion in the district judge's decision to impose sanctions upon plaintiffs' attorney as signer of the complaint. There can be little doubt that the attorney himself, not the clients, was the engine driving this litigation.
 
 
 19
 AFFIRMED IN PART AND REVERSED IN PART.
 
 WELLFORD, Circuit Judge, dissenting:
 
 20
 This dispute arose in 1979 when four plaintiffs (hereinafter the "Mills' plaintiffs") filed an action for damages in Wayne County, Michigan Circuit Court against a corporation and two individuals for fraud and deceit. In 1983 the case was ordered to mandatory mediation pursuant to Wayne County Local Rule 403.[1] The Mediation Board found in favor of the Mills' plaintiffs in the amount of $18,000. Defendants in that suit accepted the Mediation Board's decision. The Mills' plaintiffs objected to the award, however, and allegedly mailed notice of their rejection to the mediation tribunal eleven days before the deadline to reject its decision. The mediation tribunal received the Mills' plaintiffs' notice of rejection one day past the deadline under the specified procedures. The Mills' plaintiffs then moved for a court order requiring the mediation tribunal to accept their late rejection of the mediation award, but the trial court denied the Mills' plaintiffs' motion to this effect. The Mills' plaintiffs then appealed to the Michigan Court of Appeals, which held that the trial court did not abuse its discretion in refusing to set aside the mediation award, finding that the trial court correctly held that the Mills' plaintiffs did not mail a rejection notice.
 
 
 21
 The Michigan Court of Appeals, however, granted the Mills' plaintiffs' motion for a rehearing, and remanded the case to the trial court for an evidentiary hearing. After a hearing, the trial court again denied plaintiffs' motion for reconsideration, and they appealed again to the Michigan Court of Appeals, and this time, by a divided vote, the court held that the trial court erroneously denied the Mills' plaintiffs' request to set aside the mediation award. On appeal to the Michigan Supreme Court, this latest court of appeals decision was reversed and the 1983 mediation award reinstated.[2]
 
 
 22
 Alia filed suit in Oakland County Circuit Court sometime in 1987. The suit was apparently brought by Alia against his insurance company to compel them to pay first party benefits arising out of an automobile accident. The trial court judge subsequently ordered the case to mediation. Allegedly distressed that the mediation process would force his attorney to divulge privileged work product, Alia, joined by the Mills' plaintiffs, brought this action on June 17, 1988, against the Michigan Supreme Court and its justices for violations of their civil rights. They alleged both state and federal constitutional violations, violations of 42 U.S.C. Secs. 1981 and 1983, and asserted the jurisdictional amount under 28 U.S.C. Sec. 1331. They challenged the Michigan procedure requiring mediation of their state law claims based on mandatory divulging of "privileged work product" by their attorneys' deprivation of their "day in court," and deprivation of a jury trial by mediation before a three-lawyer panel. In their earlier, separate state court actions, these plaintiffs had sought a jury trial and damages against separate defendants.[3]
 
 
 23
 Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b) based on claims of (1) Eleventh Amendment immunity; (2) absolute judicial immunity; (3) adequate post-deprivation remedies under Michigan law; and (4) collateral estoppel. Plaintiffs responded by claiming that their suit was against state officials acting "beyond the bounds of federal constitutional authority" and in violation of the Michigan Constitution. The response reminded that plaintiffs claimed a violation of the Michigan Constitution for "delegating judicial power without jurisdiction." Plaintiffs also responded that claimed Eleventh Amendment immunity does not bar a suit for declaratory and/or injunctive relief.
 
 
 24
 Plaintiffs also responded that the court and the individual justices had acted in an administrative capacity, "not adjudicative or judicial" capacity, citing Forrester v. White, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). As to adequacy of state remedies, the attorney for Alia filed copies of a "Petition for Redress Of Grievances And Quo Warranto" filed with the Michigan Supreme Court in June 1985, which was "assigned administrative status" by Chief Justice G. Mennen Williams in January 1986. The Clerk of the Michigan Supreme Court advised Alia's attorney in April 1986 that the petition which sought repeal of the mediation rule had been submitted to a committee to evaluate the mediation rule. In May 1987, the Clerk advised the attorney, in response to his inquiry, that the "committee has submitted its report ... but we still await final action upon that report." No final action on this petition has been indicated.
 
 
 25
 The district court granted defendants' motion to dismiss on the grounds of Eleventh Amendment immunity with respect to the Michigan Supreme Court, and based on qualified judicial immunity as to the individual justices. Interestingly, defendants' motion to dismiss was based on judicial immunity, not on any claim of immunity.[4] He ordered plaintiffs' attorney to pay the State of Michigan $500 "for expenses incurred" pursuant to Rule 11 because the complaint was not "well-grounded in fact ... warranted by existing law" or made in good faith. Defendants' attorney, in his argument on the motion to dismiss, pointed to Mills v. Killebrew, 765 F.2d 69 (6th Cir.1985), in which this court had affirmed the same district court in dismissing an action brought by the Mills' plaintiffs under 42 U.S.C. Secs. 1983, 1985, and 1986, which sought damages against the three lawyers who had served on the mediation panel in their case brought in state court under Local Court Rule 405. In Mills, the district court held the mediation panel lawyers to be entitled to "absolute quasi-judicial immunity." 765 F.2d at 69-70. We observed in Mills that "appellants did not object to the order," and that they had also "failed to reject the award within the time period provided by Rule 403.7(e)." Id. at 71.[5] Alia is in a very different posture than were the Mills' plaintiffs in this respect.
 
 
 26
 Alia is now the only appellant not the Mills' plaintiffs. In granting defendants' motion to dismiss, the district court relied on Ford Motor Co. v. Dept. of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), and Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), in ruling for the Michigan Supreme Court, and on Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), in ruling for the individual Michigan Supreme Court justices. Despite holding that the defendant court and justices were acting "in an administrative capacity" in promulgating the rule in question, the district court did not discuss Forrester v. White, supra, nor Strandell v. Jackson County, Ill., 838 F.2d 884 (7th Cir.1988).
 
 
 27
 The Supreme Court in Ford Motor Co. held that a tax refund suit brought by Ford in Indiana for a tax refund against the Indiana Department of the Treasury and its individual chief officials, including the Governor and State Treasurer, "constitutes an action against the State of Indiana." Ford Motor Co., 323 U.S. at 463, 65 S.Ct. at 350. It also held that "[w]here relief is sought under general law from wrongful acts of state officials, the sovereign's immunity under the Eleventh Amendment does not extend to wrongful individual action...." Id. at 462, 65 S.Ct. at 350. In Ford Motor Co., the essence of the action was "recovery of money from the state," which was the "real, substantial party in interest," and thus, Eleventh Amendment immunity did apply. Id. at 464, 65 S.Ct. at 350. The nature of the instant complaint is different from Ford Motor Co. in that it challenges, on constitutional grounds, the adoption of state court rules on mediation and seeks essentially equitable relief from the Michigan Supreme Court. Under the authority of Ford Motor Co., however, and Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), the state itself or a state agency or department, such as the Department of the Treasury, or a state-operated institution to care for the mentally retarded may claim immunity in federal court suits. See Employees of Dept. of Health & Welfare of Missouri v. Dept. of Public Health & Welfare of Missouri, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973). Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), although the subject of much debate during the past one hundred years, held that "a federal court could not entertain a suit brought by a citizen against his own State." Pennhurst, 465 U.S. at 98, 104 S.Ct. at 906. The latter decision pointed out that "Congress has power with respect to the rights protected by the Fourteenth Amendment to abrogate the Eleventh Amendment immunity," 465 U.S. at 99, 104 S.Ct. at 907 (citing Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)), but we are not dealing with that situation in this case except with respect to the Sec. 1981 and Sec. 1983 claims.[6]
 
 
 28
 Pennhurst also points out that Eleventh Amendment immunity may apply where the "relief sought nominally against an officer is in fact against the sovereign, if the decree would operate against the latter," id. at 101, 104 S.Ct. at 908 (quoting Hawaii v. Gordon, 373 U.S. 57, 58, 83 S.Ct. 1052, 1052, 10 L.Ed.2d 191 (1963) (per curiam)), or if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration...." Id. at 101 n. 11, 104 S.Ct. at 908 n. 11 (quoting Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963)) (citations omitted) (internal quotation marks omitted).
 
 
 29
 It is uncertain under the above authority whether this suit is against the state itself or a state "agency or department," or whether the State of Michigan is "the real, substantial party in interest," or whether the judgment sought by Alia would involve the "public treasury" or "public administration." However, to the extent that Alia seeks money damages against the court or its individual members, I agree that he is barred by the Eleventh Amendment. See Brandon v. Holt, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). In a recent decision of this court in a suit against the State of Michigan, the State Judiciary Council, and individual justices of the Michigan Supreme Court, we held that the Judiciary Council was a state agency and immune from suit "for damages or injunctive relief" under the Eleventh Amendment. Abick v. State of Michigan, 803 F.2d 874, 876 (6th Cir.1986). In the recent decision of Will v. Michigan Dept. of State Police, --- U.S. ----, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court held that a suit against state officials in their official capacity seeking monetary damages for violations of Sec. 1983 was barred by the Eleventh Amendment because such a suit was, in fact, a suit against the state. Will, 109 S.Ct. at 2312. Thus, Alia's Sec. 1983 claims for monetary damages against the individual justices are barred by the Eleventh Amendment. However, Alia is not precluded by the Eleventh Amendment from seeking declaratory or injunctive relief under Sec. 1983 because "a State official in his or her official capacity, when sued for injunctive relief, would be a person under Sec. 1983 because 'official capacity actions for prospective relief are not treated as actions against the State'." Id. at 2311 n. 10. Therefore, Alia's Sec. 1983 claims for declaratory and injunctive relief are not barred by the Eleventh Amendment.
 
 
 30
 Thus, Alia is precluded from suing the Michigan Supreme Court for money damages or injunctive or declaratory relief by virtue of its Eleventh Amendment immunity and that the district court properly dismissed the Michigan Supreme Court entirely from this action. The individual justices are entitled to Eleventh Amendment immunity to the extent Alia is seeking money damages, but they are not entitled to claim Eleventh Amendment immunity to the extent Alia is seeking injunctive or declaratory relief.[7] This does not end the inquiry, however, because we must still decide whether the individual justices are entitled to legislative, judicial, or qualified immunity.
 
 
 31
 The justices claim they are entitled to absolute legislative immunity. In Supreme Court of Virginia v. Consumers Union, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), the defendants, who were individual justices of the Virginia Supreme Court, argued belatedly that they were immune from imposition of costs and fees in respect to their rulemaking activity based on "judicial immunity grounds." 446 U.S. at 729, 100 S.Ct. at 1973. Later, defendant justices urged "absolute legislative or judicial immunity," id. at 730, 100 S.Ct. at 1973, and plaintiffs responded that this did not apply in the case where they sought declaratory or injunctive relief. The Supreme Court in Consumers Union, however, allowed the belated assertion and held flatly that "the Virginia Court and its members are immune from suit when acting in their legislative capacity," and held further that they were acting legislatively when rulemaking. Id. at 734, 100 S.Ct. at 1976. A recent decision of this court, Abick, relying on Consumers Union, held that the Michigan Supreme Court justices were entitled to absolute legislative immunity when engaging in the "promulgation of rules of practice and procedure" because this was a "legislative activity." 803 F.2d at 818. The Supreme Court reminded us, at the same time in Consumers Union, that "we have never held that judicial immunity absolutely insulates judges from declaratory or injunctive relief with respect to their judicial acts." Id. at 735, 100 S.Ct. at 1976 (emphasis added). By footnote, it added, "Sec. 1983 was designed to enforce the provisions of the Fourteenth Amendment against all state action, whether that action be executive, legislative, or judicial." Id. n. 14 (emphasis added) (citing Ex Parte Virginia, 100 U.S. 339, 346, 25 L.Ed. 676 (1880) and Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), overruled by Rodriguez v. United States, 480 U.S. 522, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987)). The Court went on to hold that "immunity does not shield the Virginia Court and its chief justice from suit in this case," to the extent they acted in their enforcement capacities, because neither legislative nor judicial immunity apply when judges act as enforcers of the law. Id. 446 U.S. at 737, 100 S.Ct. at 1977. The Court also held that "prospective relief was properly awarded against the chief justice in his official capacity; ..." Id. at 737 n. 16, 100 S.Ct. at 1977 n. 16.[8] Thus, to the extent the individual justices acted in a rulemaking capacity, they are entitled to legislative immunity, but to the extent they acted in an enforcement capacity, they are not entitled to claim legislative immunity.
 
 
 32
 The individual justices also claim they are entitled to absolute judicial immunity. In Forrester v. White, the Supreme Court again revisited a judicial (and legislative) immunity claim in a suit brought by a state judge's "subordinate court employee" for a discriminatory discharge. The Court concluded that "it was the nature of the function performed [by the state judge], not the identity of the actor who performed it" that determined the "outcome" in an "immunity analysis." 484 U.S. at 229, 108 S.Ct. at 545. After determining that defendant judge acted in an administrative capacity, not in a "judicial or adjudicative" capacity, the Court found that he was not entitled to absolute judicial immunity. At the same time, the Court conceded that the judge acting in such administrative capacity could claim a defense of "qualified immunity." Id. at 229, 230, 108 S.Ct. at 545, 546. I conclude that the justices are not entitled to absolute judicial immunity, although they may be entitled to the defense of qualified immunity for those acts which are not of a judicial or legislative nature.
 
 
 33
 The problem in this case, it seems to me, is that the complaint asserted that defendants delegated judicial power without jurisdiction, that they "promulgated an unconstitutional rule," which is in controversy; that they set mediation fees without power to do so; that they mandated sanctions and thereby allegedly denied plaintiff's constitutional rights, including denial of a trial by the jury and the taking of property without due process; and that they inhibited the right to counsel by requiring the divulging of confidential attorney work product.
 
 
 34
 To the extent the individual justices promulgated the rules in question, they are entitled to claim legislative immunity, but this does not end the required analysis. See Supreme Court of Virginia v. Consumers Union; Forrester v. White; Will v. Michigan Department of State Police. I would therefore direct a remand for a further analysis by the district court as to whether the individual justices acted in any respect in either an administrative capacity or in an enforcement capacity.
 
 
 35
 The individual justices did not raise the defense of qualified immunity in the district court, which dismissed the case on this basis sua sponte. I would also remand this case for further consideration by the district court as to whether it can properly consider a defense of qualified immunity, when only absolute judicial immunity or Eleventh Amendment immunity has been claimed by the individual defendants.
 
 
 36
 There has been presented in this case a question of mootness in light of the alleged settlement of Alia's underlying claim against the defendant or defendants in the state court action. Settlement of all issues in a pending action on appeal will moot that action. Lake Coal Co. v. Roberts & Schaefer Co., 474 U.S. 120, 106 S.Ct. 553, 88 L.Ed.2d 418 (1985). The thrust of the action and issues before us, however, relate to rules enacted by defendants which mandate mediation in certain circumstances. The settlement in state court, if accomplished, does not settle the issues presented in this appeal. The case is therefore not moot.
 
 
 37
 Plaintiff Alia objected throughout state proceedings to the requirement of involuntary mediation by a panel of three lawyers in alleged derogation of his right to a jury trial and to his right to a confidential attorney-client relationship. A similar issue was presented to the Seventh Circuit in Strandell v. Jackson County, 838 F.2d 884 (7th Cir.1988), which held that mandating a summary jury trial under state procedure "would also affect seriously the well-established rules concerning discovery and work-product privilege." 838 F.2d at 888. Plaintiff's claims against defendants include this particular assertion. In light of the foregoing discussion, I would reverse the district court's assessment of $500 in sanctions. Plaintiff's claims were neither unfounded, baseless, nor made in bad faith. The claims, on the other hand, involve difficult and complex issues and were in no sense frivolous.
 
 
 38
 BOGGS, Circuit Judge, concurring in part and dissenting in part.
 
 
 39
 I concur in Parts I and II of Judge Guy's opinion and would affirm the dismissal; however, I dissent from Part III, believing, as does Judge Wellford, that the imposition of sanctions was inappropriate.
 
 
 
 [1]
 Arguably, Alia's claim is moot here because he went to mediation, accepted the recommendation, and entered into a settlement agreement
 
 
 [1]
 Rule 403 states, in part:
 Mediation.
 (A) Scope and Applicability of Rule. A court may submit to mediation any civil action in which the relief sought consists of money damages or division of property.
 This is similar to Michigan Rule 2.403, which is challenged in this complaint.
 
 
 [2]
 A motion for reconsideration was denied, and the United States Supreme Court denied a petition for certiorari
 
 
 [3]
 Alia stated that his separate state court lawsuit, although ordered to mediation as was the Mills' case, is still pending in state court
 
 
 [4]
 At oral argument before the district court, defendants' attorney raised an "alternative theory, legislative immunity," based upon Supreme Court of Virginia v. Consumers Union, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980). The district judge had observed "I don't think there is absolute immunity here. I think there is qualified immunity under Harlow v. Fitzgerald [, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ]." As to the alternative claim, the district judge stated "I never quite understood that ... Consumers Union speaks of absolute immunity for legislative action, and I don't know which rule applies to administrative actions of Courts." (Emphasis added)
 
 
 [5]
 We observed in Mills, 765 F.2d at 72, that the mediators had "jurisdiction," because "Rule 405 was adopted as a local rule with the approval of the Michigan Supreme Court," and that the Michigan Constitution and laws authorized that court to promulgate, "amend and simplify the practice and procedure in all courts."
 
 
 [6]
 Nowhere does Alia set out the basis of his entitlement to claim Sec. 1981 status based on race or alienage. I would uphold the district court's dismissal of Alia's Sec. 1981 claims
 
 
 [7]
 However, the Eleventh Amendment is an absolute bar to Alia's claims that the justices violated state law. Pennhurst, 465 U.S. at 89, 103-06, 104 S.Ct. at 909-10 (1984)
 
 
 [8]
 The issue whether the Virginia Supreme Court was a "person" suable under Sec. 1983 was not raised before the United States Supreme Court in Consumers Union and thus was not decided. 446 U.S. at 737, 100 S.Ct. at 1977