**Roger Darrell LOCKHART, et al., Plaintiffs,**

v.

**Ramon PATEL, M.D., et al., Defendants.**

Civ. A. No. 84–224.

United States District Court, E.D. Kentucky, Pikeville Division.

Feb. 26, 1987.

Mark G. Arnzen, Robinson, Arnzen, Parry & Wentz, Covington, Ky., for St. Paul Fire & Marine Ins. Co.

Francis Burke, Pikeville, Ky., for James B. Todd, Attorney at Law.

## OPINION

BERTELSMAN, District Judge:

Unfortunately, the court finds it necessary in this case to discuss the question of its authority to order parties and their insurers to attend settlement conferences. Also involved is the propriety of sanctions for failure to attend.

This is a medical malpractice action in which the plaintiff, a teenager, lost the sight of one eye, allegedly due to the defendant doctor's negligence. In a summary jury trial an advisory jury awarded the plaintiff $200,000.[1]

Following the summary jury trial, the court held several formal and informal pretrial and settlement conferences, both in person and by telephone. In a telephone conference on October 30, 1986, the attorney for the defendant doctor's liability insurance carrier, St. Paul Fire & Marine Insurance Company, advised the court that he had been authorized by that company's home office to offer $125,000 and no more and not to negotiate any further. At this time, the plaintiff's demand was $175,000.

Having had some success with settlement conferences in the past, the court directed the defense attorney to attend a settlement conference on November 3, 1986, and to bring with him the representative of the insurance company from the home office who had issued these instructions, or one with equal authority. The court specifically and formally admonished defense counsel: "Tell them not to send some flunky who has no authority to negotiate. I want someone who can enter into a settlement in this range without having to call anyone else."

November 3 arrived, and so did the defense attorney. But the representative from St. Paul's home office did not. In-stead, an adjuster from the local office appeared. She advised the court that her instructions from the officials at the home office were to reiterate the offer previously made and not to bother to call them back if it were not accepted.

When asked by the court whether there was some misunderstanding that it had stated a representative from the home office was required to attend, the adjuster replied, "I doubt if anyone from the home office would have come down even if in fact this is what you said." (Transcript, page 5)

Measures in response to such clearly improper conduct seemed called for. At this point, the court made the appropriate oral findings, promptly followed by a written order, that "St. Paul had deliberately refused to obey the order of the court" and that "such disobedience was deliberately contemptuous, contumacious and purposely demonstrated disrespect and disregard for the authority of the court."[2]

Accordingly, the court forthwith struck the pleadings of the defendant and declared him in default. The court further ordered that the trial set for the next day would be limited to damages only and that a hearing to show cause why St. Paul should not be punished for criminal contempt be held on December 12, 1986. Later that day, St. Paul settled with the plaintiff for $175,000.

December 12 arrived, and this time so did not one but several representatives from St. Paul's home office. The home office representatives through their counsel assured the court that it had all been a misunderstanding, not their fault indeed, but that of the local lawyer and adjuster. The court accepted these assurances at face value and permitted St. Paul to purge itself of contempt by providing a letter of apology from its Chief Executive Officer, assuring the court that it was not company policy to refuse to attend settlement con-

---

1. For a discussion of summary jury trial procedure, *see* Lambros, *The Summary Jury Trial and Other Alternative Methods of Dispute Resolution,* 103 F.R.D. 461 (1984).

2. Order dated November 3, 1986.

ferences or take it on itself to disregard court orders. The letter was forthcoming and is attached hereto as an appendix.

This opinion is written, therefore, solely to discuss the authority of the court to hold meaningful settlement conferences and the propriety of the civil sanction imposed in this instance.

The authority of a federal court to order attendance of attorneys, parties, and insurers at settlement conferences and to impose sanctions for disregard of the court's orders is so well established as to be beyond doubt. 6 Wright & Miller, *Federal Practices & Procedure*, § 1526 (1971); Moore's *Federal Practice*, ¶ 16.16.1, 16.22. F.R.Civ.P. 16(f) specifically provides:

> "**(f) Sanctions.** If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is *substantially unprepared to participate* in the conference, or if a party or party's attorney fails to participate in good faith, *the judge, upon motion or his own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D).* In lieu of or in addition to any other sanctions, the judge shall require the party or the attorney representing him or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust." (Emphasis added)

Rule 16(f) was added to original Rule 16, along with several other amendments in 1983. Although the rule refers to "parties," it clearly would be meaningless if it did not also apply to a party's liability insurer.

The Advisory Committee Note to the Amendment states that the purpose of the addition of this subrule was to "reflect that existing practice, and to obviate dependence upon Rule 41(b) or the court's inherent power" to compel respect for the court's pretrial orders. The Committee Note cites several cases illustrating practice prior to the subrule's adoption.

"Furthermore," the Advisory Committee continues, "explicit reference to sanctions reenforces the rule's intention to encourage forceful judicial management."

The Note also makes clear that the striking of a party's pleadings is an appropriate sanction, as under F.R.Civ.P. 37. Further, the rule itself makes it clear that sanctions may be imposed on the court's own motion.

The reader is referred to the Advisory Note for decisions pre-dating the 1983 Amendment. Cases since the Amendment are few, perhaps because the text of the Rule is so clear as to require little interpretation. The court finds *G. Heileman Brewing Company, Inc. v. Joseph Oat Corp.*, 107 F.R.D. 275 (W.D.Wis.1985), worthy of note, however. There, in circumstances virtually identical with those in the case at bar, the court stated:

> "I do not accept the proposition that Rule 16 does not authorize a court to require the presence of parties with full authority to settle a case.... The clear intention of the recent amendments to the Federal Rules is to provide courts with the tools that are required to manage their caseloads effectively and efficiently. One of those basic tools is the authority to conduct productive settlement conferences. *A settlement conference without all of the necessary parties present is not productive. Neither is a conference of persons who have no authority to settle.*
>
> "By bringing their dispute to a court for resolution, the parties have invoked the use of an expensive public resource. It is a misuse of those resources for any party to refuse even to meet personally with the opposing party or its counsel to attempt to resolve their disputes prior to trial.
>
> "It is no argument that it would have been futile for Joseph Oat or National

Union Fire to appear by representatives with full authority to settle, simply because these corporations had decided that they would not settle on any terms other than full dismissal of the claims against Joseph Oat. It is always possible that exposure of the decisionmakers to the realities of a case will bring about a reevaluation of settlement posture on the part of those persons. Thus *it is appropriate for a judicial officer to require that*, particularly in complex and protracted litigation, *the decisionmakers be made aware of all aspects of the case and the anticipated costs of its prosecution and defense by being personally present* before the court." (Emphasis added)

107 F.R.D. at 277.

This court is in complete agreement with these observations. The normal caseload of a United States District Judge is now considered to be 400 civil cases. At this time, every judge in this district has half again that many, because of the extended illness of one of our judges. Although some of these cases are simple, many are complex. And in addition to this civil caseload the court is also expected to deal with the criminal docket, which for this court averages about 40 cases per judge per year, some taking several weeks to try.

The drafters of amended Rule 16 knew of the docket pressures to which our courts are subject, and knew that to process 400 cases you have to settle at least 350. That is why they encouraged "forceful judicial management," which is the only means of settling a high percentage of cases.

As I have observed in another place,[3] the exigencies of modern dockets demand the adoption of novel and imaginative means lest the courts, inundated by a tidal wave of cases, fail in their duty to provide a just and speedy disposition of every case. These means may take the form of compulsory arbitration, summary jury trials, imposing reasonable limits on trial time, or, as here, the relatively innocuous device of requiring a settlement conference attended by the clients as well as the attorneys.

Of course, the court cannot require any party to settle a case,[4] whether the court thinks that party's position is reasonable or not, but it can require it to make reasonable efforts, including attending a settlement conference with an open mind.

The court hopes that the sanctions imposed here will be sufficient to convince St. Paul and other similarly minded companies and individuals of this fact and prevent similar occurrences in the future.

APPENDIX

Property & Liability Insurance

December 29, 1986

Hon. William O. Bertelsman
United States District Court
Eastern District of Kentucky
Covington, Kentucky 41011

RE: Roger Daniel Lockhart, et al. v.
Ramon Patel, M.D., et al.
Civil Action No. 84-224

Dear Judge Bertelsman:

---

3. *U.S. v. Reaves,* 636 F.Supp. 1575 (E.D.Ky.1986).     4. *Kothe v. Smith,* 771 F.2d 667 (2d Cir.1985).

48

As Chief Executive Officer of St. Paul Fire & Marine Insurance Company, I am writing this letter in response to the court's order dated December 12, 1986. St. Paul Fire & Marine Insurance Company publicly apologizes to the court for the events set forth in the record of Lockhart, et al, v. Patel, et al. and in particular for the misunderstanding which occurred at the settlement conference held on Monday, November 3, 1986. It has never been, is not now, nor will it be in the future, the policy of St. Paul Fire & Marine Insurance Company to ignore the orders of this court or any other court of law. To the contrary, it is the established policy of St. Paul Fire & Marine Insurance Company to respect the orders of this court and other courts concerning the attendance of its employees at settlement conferences.

It is the company's policy that its employees attend all settlement conferences when ordered to do so by a court of competent jurisdiction. This requirement is known to all claim handlers.

Once again, St. Paul Fire & Marine Insurance Company apologizes to the court for the events of November 3, 1986. St. Paul Fire & Marine Insurance Company wishes the court and its staff a happy, healthy and prosperous 1987.