Carl E. PITMAN, Plaintiff,

v.

BRINKER INTERNATIONAL, INC., dba On The Border, a Texas corporation doing business in Arizona, et al., Defendant.

No. CV02–1886–PHX–MHM.

United States District Court, D. Arizona.

July 8, 2003.

Carl E. Pitman, pro se.

## ORDER

ANDERSON, United States Magistrate Judge.

This matter arises pursuant to this Court's Order to Show Cause, dated June 13, 2003, regarding sanctions against Defendant Brinker International. On June 19, 2003, the Court held a hearing on the Order to Show Cause. The Court has reviewed and considered Defendant's testimony from the two hearings, Defendant's Response to the Court's Order to Show Cause, and Plaintiff's Reply thereto.

### SUMMARY OF FACTUAL BACKGROUND

Plaintiff Carl Pitman, age 41, joined Defendant Brinker International in June of 1984 as a waiter for one of its restaurants. During the course of his employment, which spanned 18 years, Plaintiff was eventually promoted to a managerial position. In May 2002, Plaintiff was the general manager of Defendant's On the Border Restaurant and Cantina in Ahwatukee, a suburb of Phoenix, Arizona. Plaintiff claims that Robert Wiejaczka, the Area Director for On the Border and Plaintiff's direct supervisor, made discriminatory comments to Plaintiff, on at least two occasions, calling Plaintiff an "old man," that he "lacked intensity," and that he was "complacent." On May 14, 2002, Wiejaczka, age 30, terminated Plaintiff's employment claiming that Plaintiff had violated Defendant's drug and alcohol policy. Wiejaczka conducted an investigation into the May 5, 2002 incident which allegedly prompted Plaintiff's termination. Specifically, Wiejaczka claims that on May 5, 2002, Plaintiff allowed underage employees to consume alcohol at the restaurant and allowed of-age employees to consume alcohol while "on the clock." Plaintiff denies that he violated Defendant's drug and alcohol policy and maintains that the actual reason he was terminated was his age in violation of the Age Discrimination in Employment Act ("ADEA").

On September 25, 2003 Plaintiff, proceeding *pro se*, filed suit alleging age discrimination in violation of the ADEA and sought compensatory damages arising from his termination.[1] Defendant denies any wrongdoing.

### SETTLEMENT CONFERENCE

In an April 14, 2003 Order and pursuant to a referral by the assigned district judge, the Court set this matter for a settlement conference at 2:00 p.m. on June 10, 2003. See, doc. # 15. The Court's order identified the appropriate representative to attend the conference on Defendant's behalf. The Order stated, in pertinent part, that:

> If a Defendant is an insured party, a representative of that party's insurer with full and complete authority to discuss and settle the case **SHALL** physically appear at the aforementioned date and time. An uninsured or self-insured corporate party **SHALL** physically appear at aforesaid Settlement Conference through its authorized representative **with full and complete authority to discuss and settle the case.** *See, Lockhart v. Patel,* 115 F.R.D. 44 (E.D.Ky.1987) (In medical malpractice action, answer stricken for failure of insurance representative with authority to settle to appear at settlement conference.) *Gee Gee Nick v. Morgan's Foods, Inc.,* [270 F.3d 590,] 2001 WL 1352164 (8th Cir., 2001). (District judge acted well within his discretion by imposing a monetary fine payable to the Clerk of the District Court as a sanction for failing to prepare requested memorandum and deciding to send a corporate representative to ADR conference with limited authority). (doc. # 15 at page 3). (Emphasis added).

Eduardo Celaya filed a Notice of Appearance on behalf of Plaintiff.

---

1. Plaintiff subsequently retained counsel to represent him in this matter. On April 14, 2003

On June 10, 2003, shortly before the settlement conference was scheduled to begin, the Court identified the parties and representatives who were present. Only defense counsel, John Mark Ogden, and Wiejaczka attended the settlement conference on Defendant's behalf. No insurance representative was present. Defendant has an Employment Practices Liability Insurance policy with a $250,000.00 deductible and a threshold amount of $125,000.00 which must be exceeded before which, Ogden claims, Defendant is obligated to notify the carrier of Plaintiff's lawsuit. Because Defendant believes that the value of Plaintiff's claim will never exceed the threshold amount, notice has not been given to the insurance carrier. Plaintiff, his wife and their attorney, Eduardo Celaya, were present at the settlement conference. Plaintiff's last pre-settlement conference demand was $450,000.00. Defendant, however, refused to make a specific settlement offer before the settlement conference.

At a hearing in lieu of the settlement conference, the Court questioned Wiejaczka to determine the extent of his settlement authority in this case. Wiejaczka stated under oath that he received authorization to settle this case up to, but not exceeding, $1075.00 from Donna Hayward, a paralegal and Defendant's Director of Litigation who resides in Dallas, Texas. He further stated that Hayward was standing by telephonically if defense counsel or the Court needed to speak with her during the settlement conference.

Realizing Defendant had not complied with the Court's Settlement Conference Order, the Court vacated the settlement conference and ordered Defendant to show cause why sanctions should not be imposed. A hearing on the Order to Show Cause occurred on June 19, 2003. Defendant was represented at this hearing by new counsel, Mark Harrison, for the limited purpose of the OSC hearing. Each side filed written memoranda.

### COURT'S AUTHORITY TO IMPOSE SANCTIONS

■ District courts are specifically empowered to conduct settlement conferences under the Rules of Civil Procedure and 28 U.S.C. § 473(b)(5).[2] Moreover, a district court may impose sanctions for failure to comply with a settlement conference order under FED.R.CIV.P. 16(f).[3] This rule authorizes the court to impose sanctions upon a party or party's attorney for failure to comply with a "scheduling or pretrial order" or for failure to participate in a settlement conference in good faith. The Court's April 10, 2003 Settlement Conference Order is a pretrial order within the meaning of Rule 16(f).

■ The district court has inherent authority to impose sanctions when a party

---

**2.** The Civil Justice Reform Act of 1990 provides that each United States district court must develop a civil justice expense and delay reduction plan which facilitates the deliberate adjudication of civil cases on the merits, monitors discovery, improves litigation management, and ensures the just, speedy, and inexpensive resolutions of civil disputes. See, 28 U.S.C. § 471 *et seq.*

Section 473(b) provides, in part:

b) In formulating the provisions of its civil justice expense and delay reduction plan, each United States district court, in consultation with an advisory group appointed under section 478 of this title, shall consider and may include the following litigation management and cost and delay reduction techniques:

*   *   *   *   *   *

(5) a requirement that, upon notice by the court, representatives of the parties **with authority to bind them in settlement discussions be present** or available by telephone during any settlement conference; (Emphasis added).

**3.** Rule 16(f) reads:

"Sanctions. If a party or party's attorney **fails to obey a scheduling or pretrial order**, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney **fails to participate in good faith**, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust." (Emphasis added).

disobeys a court order. In *Nick v. Morgan's Foods, Inc.*, 270 F.3d 590 (8th Cir.2001), the defendant corporation brought a representative to an Alternative Dispute Resolution ("ADR") conference who only had authority to settle the case for $500.00. Morgan's in-house counsel was standing by telephonically to approve any settlement which exceeded $500.00. Per the advice of Morgan's outside counsel, the in-house counsel did not attend the ADR conference. Morgan's actions violated the court's order, which directed "that all parties, counsel, corporate representatives and claims professionals with settlement authority shall attend all mediation conferences and participate in good faith; and that non-compliance with any court deadline could result in the imposition of sanctions against the appropriate party or parties." *Id.* at 593. The district court imposed sanctions on Morgan and its outside counsel based on the minimal level of participation in the ADR proceeding. The district court imposed sanctions equal to plaintiff's attorney's fees in preparing for and attending the ADR session in addition to a $1,500 fine payable to the clerk of the district court for Morgan's failure to participate in the ADR proceeding in good faith. Morgan appealed the sanction order. The Eighth Circuit held that the district court acted within its discretion in imposing monetary sanctions against a party that failed to comply with the court's order regarding an ADR proceeding. The court recognized that "[part] of the purpose of the sanctioning power-the power at issue here-is to control litigation and to preserve the integrity of the judicial process." *Id.* at 594.

■ A district court may impose harsher sanctions, if appropriate, for disobedience of a settlement conference order. See, *Lockhart v. Patel*, 115 F.R.D. 44 (E.D.Ky.1987). There, the district court ordered all parties to appear for a settlement conference. Because the defendant was represented by an insurance company, a representative from the insurance company's home office with authority to settle in the range of $125,000 (defendant's last offer) to $175,000 (plaintiff's last demand) was required to attend. No such representative attended. Instead, an adjuster from the local branch of the insurance company attended with instructions from the home office to reiterate the last offer ($125,000) and not bother to call if it was rejected. The district judge asked if there was a misunderstanding with his instructions to the parties, to which the adjuster admitted that a home office representative probably would not attend even if they knew they were required to do so.

The court in *Lockhart* stated that "[t]he authority of a federal court to order attendance of attorneys, parties, and insurers at settlement conferences and to impose sanctions for disregard of the court's orders is so well established as to be beyond doubt." *Lockhart*, 115 F.R.D. at 45. This affirms the notion that meaningful and productive settlement conferences are vital to the judicial process in assisting district courts in managing their heavy case load. The failure of a party to obey a court's order absent showing good cause warrants sanctions. Accordingly, the court in *Lockhart* struck the defendant's answer and declared him in default.

■ Sanctions are not only appropriate when the disobedience is intentional, but may also be imposed when the disobedience is unintentional. In *Lucas Automotive Engineering, Inc. v. Bridgestone/Firestone, Inc.*, 275 F.3d 762 (9th Cir.2001), the Ninth Circuit upheld sanctions against a representative of the defendant who failed to appear as ordered at a mediation session. The party claimed he had an incapacitating headache and was unable to attend and the failure to appear was not intentional. The sanctions were affirmed on appeal because of the representative's failure to notify the court that he would not be in attendance. *Id.* at 768.

### FINDINGS WARRANTING SANCTIONS

■ The Court finds that Defendant acted in bad faith and in violation of this Court's Settlement Conference Order. Notwithstanding his admission that he did not read the citations of authority in the Settlement Conference Order, Ogden professes to have vast experience practicing law in federal court by participating in approximately 100 settlement conferences or private media-

tions.[4] Based on his claimed experience and admission that he read and understood the Settlement Conference Order, Ogden knew what to expect at a settlement conference, yet he engaged in actions that violated the Court's Settlement Conference Order by: (1) not providing Plaintiff with a settlement offer for a specific dollar amount before the settlement conference;[5] (2) attending the settlement conference despite the high unlikelihood of a settlement and failing to notify the Court thereof;[6] (3) failing to participate in good faith settlement negotiations before the settlement conference; and (4) bringing as Defendant's only representative at the conference a biased corporate employee with extremely limited authority to settle the case instead of the Defendant's Director of Litigation.

Defendant never communicated to Plaintiff an offer of settlement that included a specific dollar amount before the settlement conference. Contrary to this Court's Order, on June 4, 2003, only six days before the settlement conference which had been pending for nearly two months, defense counsel met with Plaintiff and his counsel to discuss the possibility of settlement.[7] During this meeting, Defendant conveyed its belief that Plaintiff's claim would not survive summary judgment and that it would be in Plaintiff's best interest to accept its offer of a *de minimis* settlement amount. See, Exhibit 1, at OSC hearing. Defendant's belief that Plaintiff would settle for a *de minimis* amount is founded upon Defendant's own interpretation of the case before the settlement conference was held or dispositive motions filed.

Defendant's offer of a *de minimis* settlement was ambiguous because it was not for a sum certain. *De minimis* likely had different meanings to each of the parties in this case. While Defendant believed that the case had a settlement value of only $1075.00, Plaintiff had a very different interpretation of *de minimis*, judging by Plaintiff's last settlement demand of $450,000.00. Arguably, Plaintiff might reasonably assume that *de minimis* could mean upwards of $30,000.00 or the cost of defense.[8] Defendant argues, however, that because Plaintiff had made a settlement offer of $33,000.00 at the start of the lawsuit when he was representing himself, Defendant believed the case could settle for a much smaller amount than Plaintiff's last demand of $450,000.00. This argument is flawed because at the beginning of the lawsuit, Defendant knew Plaintiff was representing himself and, therefore, he lacked professional advice regarding an appropriate demand or the value of his case for settlement purposes.

▇ The purpose of a settlement conference is to facilitate a settlement or to narrow the disparity between the parties by the candid input of a neutral, disinterested judicial officer. Settling cases prior to the filing and resolution of dispositive motions benefits the court and the parties by reaching a just, speedy and inexpensive determination of an action consistent with Rule 1, FED.R.CIV.P. If a settlement is possible, it is imperative that both plaintiff and defendant arrive at a settlement conference with an open mind and a genuine willingness to meaningfully discuss the strengths and weaknesses of each party's case. Defendant did not do this and attended the settlement conference in bad faith. Defendant brought a corporate representative to the conference with limited or capped

---

4. See, p. 11, transcript of OSC hearing, dated June 19, 2003.

5. Despite the Court's order, Ogden admits that he "regularly" does not make an offer of an actual dollar amount before his settlement conferences begin. See, p. 27, lines 16–19, transcript of OSC hearing, dated June 19, 2003.

6. The Settlement Conference Order expressly set forth a pre-conference procedure if either party believed that going forward with the settlement conference would be a futile act resulting in an economic waste. See, pp. 5–6, doc. # 15.

7. The Settlement Conference Order required Defendant to respond to Plaintiff's demand not less than 14 days prior to the settlement conference. See, p. 3, doc. # 15. Emphasis in original.

8. Plaintiff's counsel should have communicated back to defense counsel when he received the *de minimis* offer of settlement to inquire as to what that offer truly meant. When Plaintiff first learned of Defendant's offer of $1075.00 it in open court, he summarily rejected it. See, transcript of June 10, 2003 hearing.

settlement authority [9] who was likely unable to make an objective evaluation of the disputed issues and the true value of the case. The appropriate representative who should have attended this settlement conference was Hayward, Defendant's Director of Litigation. She is the Defendant's representative responsible for settling cases, who, if persuaded by the Court and Plaintiff during the give-and-take of a settlement conference, has the "unfettered discretion" and authority to increase the Defendant's settlement offer of $1075.00.[10] Although Hayward had valued this case at only $1075.00 prior to the settlement conference, if physically present, she could have altered her view of the case during the settlement conference to reach a settlement, if appropriate. For settlement conferences to be productive and worthwhile, Ogden acknowledges that which the Court has learned long ago, settlement negotiations must take place in the physical presence of the parties and qualified representatives from both sides.[11] Despite his game of semantics played out at the OSC hearing, Ogden knew or should have known that he was not bringing a representative to the conference who possessed "full and complete settlement authority" to settle the case because Ogden revealed that Hayward was standing by telephonically in the event her assistance was needed to settle the case. He testified that one reason she was available telephonically was to authorize more than $1075.00.[12] This contingency demonstrates that defense counsel knew Wiejaczka lacked "full and complete authority" to settle the case. Perhaps the most telling indication that Defendant knew Hayward was the appropriate representative to attend the settlement conference was the affidavit of David Grenstein, President of On the Border. Grenstein averred that "Donna Hayward, Director of Litigation for Brinker, was and is vested with the full and complete authority to discuss and settle the case." See, Defendant's Response to Order to Show Cause (no doc. # at this time) at p. 19.

Hayward, whose job responsibilities include attending settlement conferences, testified that the thought occurred to her that her presence might be required at the settlement conference, but it was decided that she would not attend.[13] The Court reasonably infers from the credible evidence that Defendant decided not to have Hayward physically present because it was cheaper to violate the Court's order and to have her standby telephonically rather than to attend the conference in person. Such an unapproved settlement tactic is not negotiating in good faith. Quite the contrary, it constitutes a bad faith settlement practice that is predicated upon the hope that it is possible to settle the case for a fraction of the Plaintiff's demand without incurring the necessary travel expenses to have the appropriate representative attend the settlement conference in Phoenix. Additionally, Defendant [14] should have notified the Court of the great disparity between Plaintiff's demand and Defendant's offer. Defendant did not notify the Court before hand that a settlement conference at this time would be a futile act, thereby wasting the limited time, financial resources and en-

9. Ogden testified that the Settlement Conference Order only required "[him] to bring someone who had full and complete authority for that amount [$1075.00]." Incredibly, he opined that a settlement conference representative with authority to settle up to $1075.00 was not an individual with limited authority. Nevertheless, he acknowledges that Hayward was standing by telephonically in Dallas so he could obtain additional money over $1075.00 to settle the case during the settlement conference. See, pp. 39, 43, transcript of OSC hearing, dated June 19, 2003.

10. See, pp. 32–34, transcript of OSC hearing, dated June 19, 2003.

11. *Id.* at p. 44.

12. *Id.* at 43.

13. *Id.* at p. 55. The Court notes that the cost of airfare for Hayward to fly from Dallas to Phoenix and back is approximately $1200.00, more than the limited authority given to Wiejaczka, Defendant's local representative, and substantially less than the cost to prepare and argue a dispositive motion ($5000.00 to $10,000.00). See, pp. 53–54, transcript of OSC hearing, dated June 19, 2003.

14. Plaintiff's counsel can not be fairly faulted in this regard because he did not know what Defendant's actual position of settlement was until the amount ($1075.00) was disclosed for the first time at the hearing on June 10, 2003.

ergies of the Court and Plaintiff on June 10, 2003.[15]

Defendant argues that the absence of Hayward's physical presence was the result of a simple misunderstanding of the Court's Order. The actions and testimony of Defendant's representatives suggest otherwise. Sanctions are appropriate.

Accordingly,

The Court **FINDS** that Plaintiff's attorney's fees (20.8 hours at $150.00 per hour) and costs ($6.00 parking fee) related to the subject settlement conference are reasonable and that Defendant's noncompliance with Rule 16 and the Settlement Conference Order were not substantially justified.

**IT IS HEREBY ORDERED** that Plaintiff's Request for Reimbursement of Settlement Conference Expenses (doc. #27) is **GRANTED** and hereby imposing sanctions on Defendant Brinker International and its attorney, John mark Ogden, on a joint and several liability basis, in the amount of $3126.00 which represents the cost to Plaintiff to prepare for and attend a meaningless settlement conference. Absent good cause shown, this monetary sanction shall be paid to Plaintiff's counsel within 14 days hereof. Defendant shall also file a Notice of Compliance with Sanctions and provide a copy to undersigned's chambers by the aforesaid deadline.

**IT IS FURTHER ORDERED** that the parties' settlement conference memoranda and Exhibit 1 introduced in evidence at the OSC hearing shall by filed under seal by the Court's staff and shall remain sealed until further order of the Court.[16]

---

**15.** The Settlement Conference Order had an opt-out procedure that Defendant could have, but failed, to follow.

"7. Counsel and any party, if unrepresented by counsel, shall notify the Court in writing, at least, ten (10) business days before the Settlement Conference if one or more of the attorneys or unrepresented parties believes that the Settlement Conference would be a futile act resulting in an economic waste because, for example, a party or insurer has adopted an unreasonable position from which that party or insurer refuses to deviate. The Court will then consider whether the Settlement Conference would be helpful and, if not, whether the Settlement Conference should be canceled or other forms of the alternative dispute resolution be considered. If there is disagreement between or among the attorneys or unrepresented parties on this issue or any other issue, they are instructed to arrange for a telephonic conference with the Court and all counsel as soon as reasonably practical. If no such conference is arranged, it will be presumed that all counsel, their clients and any unrepresented party believe that there is a reasonable, good faith opportunity for settlement, and that the involvement of a settlement judge is needed to accomplish it." See, p. 7, doc. #15.

**16.** The Court acknowledges the substantial assistance of Jodie Wertheim, a summer extern from the ASU College of Law, in the preparation of this Order.